# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 04-1140

## FLOYD HAYDEN AND LUCINDA HAYDEN

## VERSUS

## DERRECK SPENCER D/B/A DERRECK SPENCER LOGGING, ET AL.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NUMBER 54,888
HONORABLE ROBERT E. BURGESS, PRESIDING

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SYLVIA R. COOKS
## JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and J. David Painter, Judges.

**AFFIRMED**.

Charles A. "Sam" Jones, III
Attorney at Law
105 N. Stewart Street
P.O. Box 995
DeRidder, Louisiana 70634
(337) 463-5532
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Floyd Hayden and Lucinda Hayden

W. Orie Hunter, III
Lunn, Irion, Salley, Carlisle, and Gardner
P.O. Box 1534
Shreveport, Louisiana 71165-1534
(318) 222-0665
COUNSEL FOR DEFENDANTS/APPELLEES:
    Derreck Spencer d/b/a Derreck Spencer Logging, et al.

**COOKS, Judge.**

## STATEMENT OF THE CASE

On March 23, 2001, Lucinda Hayden was driving a 1990 Ford Tempo and was stopped at a red light in Many, Louisiana, behind a log truck being driven by Derreck Spencer. The log truck began to back up to allow space for oncoming traffic to make a right turn when the pole of the trailer struck the roof and went through the windshield of Ms. Hayden's vehicle. Ms. Hayden sued Derreck Spencer d/b/a Derreck Spencer Logging and his insurer, Clarendon National Insurance Company. Liability was stipulated to by the Defendants and the issue of quantum was tried before a jury on August 25 and 26, 2003. The jury awarded Ms. Hayden the following:

| | |
|---|---|
| Pain and suffering | $2,500.00 |
| Past medical expenses | $7,500.00 |
| Lost Wages | $3,120.00 |

On August 26, 2003, a bench trial was held on the issue of ownership of the Ford Tempo. The trial court found Ms. Hayden was the owner of the vehicle at the time of the accident and did not have insurance coverage on the vehicle. The trial court allowed Spencer Logging a credit of $10,000.00 under Louisiana's "no pay-no play" statute. *See* La.R.S. 32:866(A)(1). Ms. Hayden filed this appeal asserting the jury verdict was in error. Additionally, Ms. Hayden contends the trial court erred in finding Ms. Hayden was the owner of the Ford Tempo at the time of the accident. For the reasons assigned below, we affirm the decision of the trial court.

## LAW AND DISCUSSION

*Ownership of the Ford Tempo and Insurance Coverage*

It is undisputed the motor vehicle title on the Ford Tempo was still in the name of Bobbie Holden (Ms. Hayden's stepdaughter) and the vehicle was listed on her

2

policy with State and County Mutual Fire Insurance Company. Ms. Hayden was not listed on the policy as an insured driver. Ms. Hayden contends she was driving the Ford Tempo with the express consent of Ms. Holden and since no transfer of title occurred, insurance coverage continued under Ms. Holden's policy and Ms. Hayden was not obligated to obtain her own insurance on the vehicle. She cites the Texas Certificate of Title Act which provides in order for a sale to be valid under Texas law, the transfer must be in compliance with the procedures outlined in the Act. At trial, however, Ms. Hayden testified she bought the Ford Tempo from her stepdaughter, was in possession of the vehicle for three or four weeks prior to the accident and had just paid the last installment. She testified as follows:

Q. Who did you buy that car from?
A. From my stepdaughter.
Q. And she lives where?
A. In Texas.
Q. And before this accident, how long had you been driving that Ford Tempo?
A. I didn't get it until in January because she was doing work to it and we just paid her off and when she got it all fixed, she brought it up here for us to have. We got her paid off.
          . . . .
Q. Had you ever gone to an insurance agent and requested a policy of insurance on the Ford Tempo?
A. No sir. It had just got through being paid for. She was up here the day the accident took place for us to go check everything and have it changed over into our name.
          . . . .
Q. So you'd had the Ford Tempo for about a month?
A. Yes, sir.
Q. But you'd been paying her longer than that.
A. Yes sir.
          . . . .
Q. But you had never insured the car.
A. No sir because it was still in her name.
Q. You never even registered the car in your name.
A. No sir, not yet.

Ms. Holden testified as follows:

Q. Was she driving that vehicle with your permission?
A. Yes.

Q. Or, under what circumstances was she driving that vehicle?
A. They were buying the car from me.
Q. Okay. She and Mr. Hayden?
A. Yes sir.
Q. Did you have a policy of insurance covering that vehicle?
A. Yes sir.

. . . .

Q. Okay. Had they completed payment for it?
A. Yes sir.
Q. How recently had they made the last payment?
A. Couple of weeks, I think. It's been a while.
Q. Before the accident?
A. Before that.
Q. Okay. When were you and she to change the papers or the title on the vehicle?
A. The day of the accident.

. . . .

Q. All right. And when Ms. Hayden testified, she told me that was her car.
A. Yes.
Q. And you're not disputing that was her car?
A. No sir, I am not.
Q. And actually, I think she told me that they hadn't finish paying you for the car but you're telling us that she had. Is that correct?
A. They had finished paying for the car. The day of the accident, when she came home that day from work, we were going to have it transferred.
Q. When did y'all agree that she was going to buy that car from you?
A. Oh, lord. Sometime close to the end of the year before.

. . . .

A. She had the car approximately three or four weeks before the accident, that's it.

We conclude the trial court was correct in finding Ms. Hayden was the owner

of the vehicle at the time of the accident and under Louisiana law she was obligated

to obtain insurance coverage. In *Touchet v. Guidry*, 550 So.2d 308 (La.App. 3 Cir.

1989), this court stated:

> [U]nder Louisiana law, title to motor vehicles, though imperfect, may be transferred between the parties in accordance with the provisions of the Civil Code even though they have not complied with the Vehicle Certificate of Title Law (LSA-R.S. 32:701 et seq.); *Scott v. Continental Ins. Co.,* 259 So.2d 391 (La.App. 2d Cir. 1972); *Luke v. Theriot*, 195 So.2d 685 (La.App. 1st Cir. 1967). The registration of sales of motor vehicles under the Vehicle Certificate of Title Law is an administrative proceeding which does not bear any essential relationship to transfer of motor vehicles under the provisions of the Civil Code. *Scott v.*

4

*Continental Ins. Co., supra.* Under the provisions of LSA-C.C. art. 1539, the manual gift of a corporeal movable accompanied by real delivery is not subject to any formality. *Morris v. National Dairy Products Corporation*, 160 So.2d 371 (La.App. 4th Cir. 1964).

*Id.* at 313 (footnote omitted.) *see also, Soileau v. Soileau*, 95-578 (La.App. 3 Cir. 11/2/95), 664 So.2d 551.

The ownership of the Ford Tempo was transferred by Ms. Holden to Ms. Hayden even though the Texas certificate of title reflected Ms. Holden as the registered owner. Therefore, we affirm the decision of the trial court allowing a $10,000.00 credit to the Defendants under Louisiana's "no pay-no play" provision. *See* La.R.S. 32:866(A)(1).

*Jury Verdict*

Ms. Hayden contends the damages awarded by the jury were inadequate and asserts the following assignments of error:

1. The jury erred in failing to award loss of consortium to Mr. Hayden.
2. The jury erred in failing to award the entire amount of medical expenses incurred by Ms. Hayden.
3. The jury erred in failing to award damages to Ms. Hayden for permanent disability, limitation of activities and loss of enjoyment of life.
4. The jury erred in failing to award sufficient damages to Ms. Hayden for pain and suffering and lost wages.

We have examined the medical evidence along with the testimony of Ms. Hayden and find there is ample support for the amount of damages awarded by the jury. The jury heard the testimony of Ms. Hayden's treating physician, Dr. David H. Steiner, an orthopedic surgeon, regarding the extent and duration of her injuries following the March 2001 accident. Dr. Steiner treated Ms. Hayden from April 6, 2001 until May 2003. In her initial visit to Dr. Steiner, Ms. Hayden complained of pain in her right ankle, neck, back, left shoulder and left hand. His initial impression was Ms. Hayden had degenerative disk disease of the cervical and lumbar spine, spondylolisthesis in the lumbar spine, arthritis, impingement syndrome of the left

shoulder, carpal tunnel syndrome bilateral but worse on the left, and bursitis in the retro Achilles area of the right foot. He testified her conditions predated the accident but were asymptomatic prior to March 2001. However, Dr. Steiner was not aware of nor did he examine the records of Ms. Hayden's family physician, Dr. Gary Founds, from the Sabine Medical Center. Over the next few months, Dr. Steiner treated Ms. Hayden with cortisone injections and pain medication, Lorcet Plus. In July 2001, Dr. Steiner performed carpal tunnel release surgery on Ms. Hayden's right wrist. On February 28, 2002, Dr. Steiner performed carpal tunnel release surgery on Ms. Hayden's left wrist. Dr. Steiner continued to treat Ms. Hayden conservatively through May 2003. He did not recommend any future surgery for her neck or back problems. He found the shoulder pain was, in fact, referred pain initiating in her neck. Dr. Steiner opined the accident aggravated "the disease process already there." Dr. Steiner's bill for medical services was $5,645.00.

Ms. Hayden asserts her problems with her hands, neck and shoulder are solely attributable to the March 2001 accident. She claims she was asymptomatic prior to the accident. However, the jury examined the medical records of Ms. Hayden's family physician, Dr. Gary Founds and apparently concluded Ms. Hayden's complaints of pain in her hands, neck and shoulder predated the accident. Specifically, Ms. Hayden consulted Dr. Founds on January 27, 2001 for numbness and tingling in her fingers. Prior to that visit, on November 19, 1999, Dr. Founds examined Ms. Hayden for "complaints of left shoulder hurting with spasms." On February 8, 2000, Ms. Hayden visited Dr. Founds with complaints of pain in her right ankle and left shoulder. Again, on May 17, 2000, Ms. Hayden was examined by Dr. Founds complaining of pain in her ears and both shoulders. Dr. Founds treated Ms. Hayden conservatively with cortisone and pain medication prior to the accident.

6

Additionally, Dr. Founds' records indicated on June 6, 2001 Ms. Hayden reported she was moving a dresser and experienced a muscle spasm in her back and shoulder. In November 2001, Ms. Hayden fell and cut her head requiring stitches and an x-ray of her head.

In May 2003, Ms. Hayden was involved in another motor vehicle accident. A backhoe hit her car, causing it to go into a spin and fall thirty feet down an embankment and hit a telephone pole. She had to be pried from the car by the police.

The jury apparently concluded, although some of her present complaints were attributable to the March 2001 accident, her complaints of pain in her hands, ankle, neck and shoulder predated March 2001 and were not solely caused by the accident with Derreck Spencer. We find support for the jury's conclusion and the amount of damages awarded to Ms. Hayden was not unreasonable. Accordingly, we affirm the judgment of the trial court.

## DECREE

Based on the foregoing review of the record, the judgment of the trial court is affirmed. All costs of this appeal are assessed to Floyd and Lucinda Hayden.

**AFFIRMED.**