STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

16-192


JIM MONTGOMERY AND
NATALIE MONTGOMERY

VERSUS

MR. AND MRS. RONNIE LESTER

************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, DOCKET NO. 251,685, DIVISON "F"
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Jimmie C. Peters, James T. Genovese, and John E. Conery, Judges.

AFFIRMED.
EXCEPTION DENIED.


**Jerry L. Lavespere, Jr.**
**1805 Jackson Street**
**Alexandria, Louisiana 71301**
**(318) 443-9926**
**COUNSEL FOR PLAINTIFFS/APPELLANTS/APPELLEES:**
    **Jim Montgomery and Natalie Montgomery**

**Michael K. Cox**
**Cox, Cox, Filo, Camel & Wilson, LLC**
**723 Broad Street**
**Lake Charles, Louisiana 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFFS/APPELLANTS/APPELLEES:**
     **Jim Montgomery and Natalie Montgomery**

**Charles D. Elliott**
**Vilar, Elliott & Green, L.L.C.**
**Post Office Box 12730**
**Alexandria, Louisiana 71315-2730**
**(318) 442-9533**
**COUNSEL FOR DEFENDANTS/APPELLANTS/APPELLEES:**
     **Ronnie Lester and Ellen Lester**

**GENOVESE, Judge.**

In this tort action, Plaintiffs, Jim Montgomery and Natalie Montgomery, and Defendants, Ronnie Lester and Ellen Lester,[1] appeal the judgment of the trial court awarding Plaintiffs $200,000.00 as a result of injury to and the resultant death of Plaintiffs' thoroughbred horse caused by Defendants' dog. Additionally, on appeal, the Lesters have raised an Exception of No Right of Action. For the following reasons, we affirm the trial court judgment, and we deny the Exception of No Right of Action.

## FACTS AND PROCEDURAL HISTORY

Jim and Natalie Montgomery filed suit against Ronnie and Ellen Lester, alleging that on November 6, 2014, one of the Lesters' dogs trespassed upon their property and began "harassing, chasing[,] and barking" at a horse, UN/Lindsay Jean '13 (Lindsay Jean '13), located in a pen on their property. The Montgomerys allege that the actions of the dog caused the horse to collide with the pen's fence and caused the horse to attempt to climb the fence. In so doing, the horse was injured and, due to the nature of the injuries, was later euthanized.

Following a bench trial, the trial court ruled in favor of the Montgomerys and awarded them $200,000.00 in damages. From that judgment, both parties appeal. Additionally, on appeal, the Lesters have raised an Exception of No Right of Action.

---

[1]The original Petition for Damages named "Mr. Ronald Lester" and "Mrs. Ronald Lester" as Defendants, and the caption consistently read "Mr. and Mrs. Ronald Lester." The First Amending and Supplemental Petition for Damages amended the allegations as well as the caption to name "Mr. and Mrs. Ronnie Lester." In answer to these proceedings, Defendants appear as Ronnie Lester and Ellen Lester.

## ASSIGNMENTS OF ERROR

The Lesters present the following assignments of error for our review:

1.  The trial court committed legal error when it granted judgment in favor of the members of a limited liability company where the property at issue was owned by a limited liability company, as the members had no right of action.

2.  The trial court committed legal error when it allowed and relied upon the deposition testimony of Jay Goodwin on the issue of value, where there was no scientific basis for his testimony.

Additionally, the Montgomerys present the following assignment of error for our review:

> The [t]rial [c]ourt erred in awarding Plaintiffs[] special damages in an amount less tha[n] the undisputed expert testimony established. The trial court had absolutely no basis for doing so and offered no explanation for doing so.

## LAW AND DISCUSSION

The Lesters' Exception of No Right of Action raises the same issue as their first assignment of error. In their exception, the Lesters contend that the claims of Jim Montgomery and Natalie Montgomery should be dismissed because these individuals "have no personal right to claim the damages asserted in this lawsuit" since "[t]he registered owner of the horse at issue was Montgomery Equine Center, LLC, and not the Plaintiffs." Likewise, they contend that the trial court erred "when it granted judgment in favor of the members of a company where the horse at issue was owned by Montgomery Equine Center, LLC, a limited liability company[,] " since "[t]he members individually had no right of action."

Louisiana Code of Civil Procedure Article 927 provides an illustrative list of "objections which may be raised through the peremptory exception" including that of "[n]o right of action, or no interest in the plaintiff to institute the suit." La.Code Civ.P. art. 927(A)(6). "Whether a plaintiff has a right of action is a question of

law." *Owens v. State*, 14-725, p. 2 (La.App. 3 Cir. 2/25/15), 157 So.3d 1225, 1226 (quoting *Randall v. Concordia Nursing Home*, 07-101, p. 4 (La.App. 3 Cir. 8/22/07), 965 So.2d 559, 564, *writ denied*, 07-2153 (La. 1/7/08), 973 So.2d 726). "The burden of proving that a plaintiff has no right of action is on the movant." *Id.*

We acknowledge that the Montgomerys urge this court not to consider the present exception since it was not raised at the trial court level. Although, generally, matters not raised in the trial court are not properly before an appellate court, an appellate court may recognize an exception of no right of action on its own motion,[2] or may consider such an exception raised for the first time on appeal.[3] In this case, the Lesters contend that Montgomery Equine Center, LLC, as opposed to the Montgomerys individually, had the legal right to assert the present claim and be awarded damages, if any.

The law recognizes "two kinds of persons: natural persons and juridical persons." La.Civ.Code art. 24. The Montgomerys, individually, are "natural persons[.]" *Id.* Montgomery Equine Center, LLC, is a "juridical person" as it "is an entity to which the law attributes personality[.]" *Id.* "The personality of a juridical person is distinct from that of its members." *Id.*

The law governing juridical persons is clear. Jim and Natalie Montgomery are not the same legal persons as the limited liability company (LLC) of which they are the sole members. As members of the LLC, the Montgomerys are not

---

[2]Louisiana Code of Civil Procedure Article 927(B) provides, in pertinent part: "The nonjoinder of a party, peremption, res judicata, the failure to disclose a cause of action or a right or interest in the plaintiff to institute the suit, or discharge in bankruptcy, may be noticed by either the trial or appellate court on its own motion."

[3]Louisiana Code of Civil Procedure Article 2163 provides, in pertinent part: "The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record."

3

exposed to personal liability for the debts of the LLC, with limited exception.[4] *Thomas v. Bridges*, 13-1855 (La. 5/7/14), 144 So.3d 1001. As a corollary to that, the members likewise have no interest in the LLC's property. La.R.S. 12:1329.[5] Thus, the rule of law is that the members of an LLC do not have the individual right to sue for damages sustained by the LLC. *Zeigler v. Housing Auth. of New Orleans*, 12-1168 (La.App. 4 Cir. 4/24/13), 118 So.3d 442.

Therefore, resolution of this issue raised on appeal requires a determination of whether Jim and Natalie Montgomery, or Montgomery Equine Center, LLC, has the legal right to assert the claim for damages resulting from the death of the horse. This determination is to be made based solely upon the evidence introduced at trial as to the ownership of Lindsay Jean '13. The relevant inquiry, therefore, is simply who owned the horse.

Direct evidence of the ownership of Lindsay Jean '13 was presented at trial through the testimony of both Jim and Natalie Montgomery. Natalie Montgomery testified that she was the owner of Lindsay Jean '13 in 2014. This fact was corroborated by Jim Montgomery, who also testified that he and his wife were the sole owners of the horse. There was no countervailing testimony that the Montgomerys were in fact not the owners, nor was there any testimony that Montgomery Equine Center, LLC, was the owner of Lindsay Jean '13.

---

[4]Louisiana Revised Statutes 12:1320(D) provides:

> Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

[5]Louisiana Revised Statutes 12:1329 provides: "A membership interest shall be an incorporeal movable. A member shall have no interest in limited liability company property."

4

In support of their contention to the contrary, the Lesters argue that the Certificate of Foal Registration (registration certificate) for Lindsay Jean '13, which was introduced into evidence at trial, is proof that Montgomery Equine Center, LLC, was actually the owner of Lindsay Jean '13. Notably, this registration certificate is the sole evidence relied upon by the Lesters to establish ownership by Montgomery Equine Center, LLC. The registration certificate upon which the Lesters rely does indicate that it was issued to "Montgomery Equine Center." Despite the entity to which such a registration certificate is issued, we agree with the Montgomerys that "registration of a horse does not prove ownership under Louisiana Law."

As an analogy, our jurisprudence has consistently held that the issuance of a certificate of registration with the Louisiana Department of Motor Vehicles is not solely determinative of the ownership of a vehicle.[6] *Touchet v. Guidry*, 550 So.2d 308 (La.App. 3 Cir. 1989); s*ee also, e.g.*, *Hayden v. Spencer*, 04-1140 (La.App. 3 Cir. 2/2/05), 894 So.2d 551, *writ denied*, 05-982 (La. 6/3/05), 903 So.2d 464; *Clark v. Superior Ins. Co.*, 90-1317 (La.App. 3 Cir. 5/20/92), 600 So.2d 150; and *Brister v. Huffman Bros. Ins. Agency*, 91-659 (La.App. 3 Cir. 11/4/92), 608 So.2d 278. More germane to the present case is *Swido v. Lafayette Ins. Co.*, 04-1674 (La.App. 3 Cir. 11/2/05), 916 So.2d 399, *writ denied*, 05-2509 (La. 3/31/06), 925 So.2d 1261.

In *Swido*, ownership of a horse, Mary Mae, was an issue before the court in a summary judgment proceeding. Therein, the parties disputed whether the sale of Mary Mae had been perfected. In their efforts to establish that ownership of the

---

[6]In brief, the Lesters analogize the registration certificate to the documentation issued for automobiles stating: "This registration or certification is like a car title, and it must be presented by the owner of the horse if it is to be sold, raced or bred."

horse had been transferred, plaintiffs in *Swido* relied upon certain documents pertaining to the registration of Mary Mae with the National Spotted Horse Association, Inc. (NSHAI). This court refused to consider the submitted documents because they were not properly sworn nor verified, but opined that regardless, "the documents would not affect our conclusion." *Id.* at 403. After quoting *Touchet*, 550 So.2d 308, on the law relative to title and registration of automobiles, this court concluded that "Louisiana law does not require registration of horses[]" and "**[r]egistration documentation regarding Mary Mae filed with the NSHAI has no bearing on the transfer of her ownership** pursuant to La.Civ.Code art. 2456[7]." *Swido*, 916 So.2d at 403 (emphasis added).[8]

Based upon our review of the record, we find that the only direct evidence on the issue of ownership is the testimony of Jim and Natalie Montgomery that they were the owners of the horse. Moreover, there is no evidence to refute their testimony. The registration certificate issued to another entity is not proof of ownership. For these reasons, we find sufficient evidence in the record to establish ownership of Lindsay Jean '13 by the Montgomerys and conclude that the Lesters' first assignment of error is without merit. Additionally, and for the same reasons, we find no merit to the Exception of No Right of Action, as the Lesters have failed to prove that the owner of Lindsay Jean '13 was Montgomery Equine Center, LLC, and not Jim and Natalie Montgomery. Accordingly, we deny the Exception of No Right of Action.

---

[7]Louisiana Civil Code Article 2456 provides: "Ownership is transferred between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid."

[8]Recognizing that the registration of horses is not a legal requirement in Louisiana, this court characterized the argument that a registration certificate for a horse proves ownership thereof to be "more tenuous" than in the case of automobiles, since registration of automobiles with the Department of Motor Vehicles is required. *Id.*

In their second assignment of error, the Lesters argue that the trial court legally erred in allowing and relying on the testimony of Jay Goodwin. We disagree.

Mr. Goodwin was retained by the Montgomerys to provide a value for Lindsay Jean '13. The parties took his deposition prior to trial, at which time the Montgomerys offered Mr. Goodwin as an expert in valuation of thoroughbred horses. The Lesters objected and filed a motion to exclude his testimony. That motion was denied by the trial court on the morning of trial.

In addressing this purported error by the trial court, the Lesters note that "Mr. Goodwin has never testified as an expert in a court of law about the value of horses." Although mentioned, their argument on appeal does not focus on the qualifications of Mr. Goodwin to be accepted as an expert and his expertise in the industry; rather, they address the reliability of his conclusions. We find no merit to either of these contentions.

To the extent that the Lesters find error with the trial court "allowing" Mr. Goodwin to testify, this court has stated the following relative to the admissibility of expert testimony:

> Official Comment (d) of La.Code Evid. 702 states that "[b]road discretion should be accorded the trial judge in his determination as to whether expert testimony should be held admissible and who should or should not be permitted to testify as an expert." As such, a trial court's decision to admit or exclude expert testimony is subject to an abuse of discretion standard of review. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *State v. Craig*, 95-2499 (La. 5/20/97), 699 So.2d 865, *cert. denied*, 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997).

*Godchaux v. Peerless Ins. Co.*,13-1083, pp. 3-4 (La.App. 3 Cir. 6/4/14), 140 So.3d 817, 821, *writ denied*, 14-1411 (La. 10/3/14), 149 So.3d 801.

7

In this case, the record establishes that since 1997, Mr. Goodwin has been in the business of breeding and selling thoroughbred horses. He is also a part owner of a sales agency which is the third top seller of thoroughbred horses in North America, selling approximately $17,000,000.00 in horses in 2014 on a commission basis. Moreover, the valuation of thoroughbred horses constitutes about 99% of Mr. Goodwin's business. Given these credentials, we find no abuse of discretion in the trial court's decision to allow Mr. Goodwin to testify.

The Lesters also argue on appeal that the testimony of Mr. Goodwin on the value of Lindsay Jean '13 "was based purely on his experience, and his testimony could not be subjected to any objective inquiry." Their representation that "Mr. Goodwin claimed that he could look at a horse and tell how much it would bring at auction" is an inaccurate and incomplete representation of his testimony as to how he reached his valuation.

According to the evidence, Mr. Goodwin inspected Lindsay Jean '13 in October 2013 and April 2014. In his testimony, Mr. Goodwin provided different factors that he considered in reaching his conclusion. Relying upon his experience in the industry, Mr. Goodwin provided testimony regarding the sire and dam of Lindsay Jean '13 and what he considered a "huge pedigree." He also discussed the horse's physical characteristics and appearance and explained the significance of his observations. With sound supporting reasons, Mr. Goodwin testified that he considered these factors to be excellent with this horse. In his opinion, Lindsay Jean '13 "was definitely the best horse . . . coming out of Louisiana that year[,]" and he ranked this horse in the top 10% of all yearlings he had observed that year. Mr. Goodwin was also knowledgeable of the relevant market and the sale of comparable horses.

8

The Lesters did not retain their own expert to contradict the testimony of Mr. Goodwin as to the manner in which he reached his valuations, nor did they offer any evidence to refute the methodology utilized by him in reaching his conclusions. Although the Lesters complain that Mr. Goodwin did not produce data in support of his valuation, he was not requested to do so; however, he did explain in his deposition what information existed and was available to substantiate his testimony. At no point did the Lesters seek additional information through discovery, nor did they subpoena the information referenced by Mr. Goodwin in his deposition.

For the foregoing reasons, based upon our review of Mr. Goodwin's testimony, we find that there was sufficient factual basis for his opinion on the value of Lindsay Jean '13. Therefore, we find no error by the trial court in "relying" on the expert opinion of Mr. Goodwin.

Finally, the Montgomerys complain on appeal that the trial court erred in awarding them special damages[9] of $200,000.00, an amount less than what Mr. Goodwin testified to relative to the value of Lindsay Jean '13. We also find no merit to this contention.

The Montgomerys contend that the trial court "improperly rejected" Mr. Goodwin's "uncontradicted testimony" that the value of Lindsay Jean '13 was between $250,000.00 and $350,000.00, and argue that it should have been accepted by the trial court.

> Generally, "'uncontradicted expert testimony should be accepted as true.'" *Prestridge v. Bank of Jena*, 05-545, p. 18 (La.App. 3 Cir. 3/8/06), 924 So.2d 1266, 1278, *writ denied*, 06-0836 (La. 6/2/06), 929 So.2d 1261. However, "'[e]ven uncontradicted expert testimony is

---

[9]The judgment actually awards the Montgomerys $200,000.00 in what it classifies as "general damages."

not binding on the factfinder.'" *Id.* at 1278 (quoting *Penton v. Healy*, 04-1470, p. 4 (La.App. 4 Cir. 1/26/05), 894 So.2d 537, 540, *writ denied*, 05-0975 (La. 6/3/05), 903 So.2d 463). The factfinder has the discretion to accept or reject expert testimony and to determine the amount of weight it may be due. *Id.* As our supreme court explained in *Ryan v. Zurich Am. Ins. Co.*, 07-2312, p. 13 (La. 7/1/08), 988 So.2d 214, 222 (citations omitted):

> "A fact finder may accept or reject the opinion expressed by an expert, in whole or in part." "The trier of fact may substitute common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole."

*Hebert v. Richard*, 15-08, pp. 18-19 (La.App. 3 Cir. 6/17/15), 166 So.3d 1265, 1279, *writs denied*, 15-1390, 15-1391 (La. 10/2/15), 178 So.3d 991.

In the instant matter, Mr. Goodwin testified that the value of Lindsay Jean '13 could have changed between April 2014 and the time that the horse would have been sold. He also testified that the horse had not yet been broken and that unforeseen circumstances could have arisen prior to any sale. Further, Mr. Goodwin admitted that he did not know what the speed of Lindsay Jean '13 would be, which would be a factor affecting the value of the horse.

In addition to Mr. Goodwin's testimony, the trial court heard evidence that Lindsay Jean '13 was insured for $35,000.00.[10] Additionally, according to Natalie Montgomery, other horses in the same age range were selling for $100,000.00. These are all variables available to the trial court for consideration.

Based upon the evidence in the record, although the Montgomerys contend that "[t]he trial court had absolutely no basis" for awarding an amount less than the valuation provided by their expert, the record contains evidence from their own expert conceding that there were other relevant factors which could have an impact

---

[10]This evidence came in over objection of counsel; however, its admission was not raised as an error on appeal.

10

on the horse's value. The trial court was free to consider this evidence and to conclude that such factors warranted a reduction or adjustment of Mr. Goodwin's proposed figures. For these reasons, we find a reasonable basis in the record for the trial court's award, and we are unable to conclude that such an award of $200,000.00 is manifestly erroneous or clearly wrong.[11]

## DECREE

For the reasons set forth herein, we affirm the trial court judgment in favor of Jim Montgomery and Natalie Montgomery; we deny the Lesters' Exception of No Right of Action; and, we assess costs of this appeal to Defendants, Ronnie Lester and Ellen Lester.

**AFFIRMED.**
**EXCEPTION DENIED.**

---

[11]"An appellate court reviews an award of special damages pursuant to the manifest error standard of review." *Smith v. Sw. Louisiana Hosp. Ass'n*, 15-502, p. 11 (La.App. 3 Cir. 11/4/15), 178 So.3d 308, 315 (quoting *Cormier v. Colston*, 05-507, p. 9 (La.App. 3 Cir. 12/30/05), 918 So.2d 541, 547-48).