# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 17-1026

SUCCESSION OF DINESH SHAW, M.D.

VERSUS

ALEXANDRIA INVESTMENT GROUP, LLC

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 257,131
HONORABLE WILLIAM GREGORY BEARD, DISTRICT JUDGE

**********

**D. KENT SAVOIE**
**JUDGE**

**********

Court composed of Shannon J. Gremillion, Phyllis M. Keaty, and D. Kent Savoie, Judges.

**AFFIRMED.**

**William M. Ford**
**Attorney at Law**
**P. O. Box 12424**
**Alexandria, LA 71315-2424**
**(318) 442-8899**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Succession of Dinesh Shaw, M.D.**

**Michael M. Meunier**
**Imtiaz A. Siddiqui**
**Sullivan Stolier Schulze & Grubb LLC**
**909 Poydras Street, Suite 2600**
**New Orleans, LA 70112**
**(504) 561-1044**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Alexandria Investment Group, LLC**

**Billy R. Pesnell**
**J. Whitney Pesnell**
**W. Alan Pesnell**
**The Pesnell Law Firm, A P.L.C.**
**H.C. Beck Building, Suite 1100**
**400 Travis Street (71101)**
**P. O. Box 1794**
**Shreveport, LA 71166-1794**
**(318) 226-5577**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Succession of Dinesh Shaw, M.D., John W. Munsterman, Executor**

**Barbara Bell Melton**
**Faircloth, Melton & Sobel, L.L.C.**
**105 Yorktown Drive**
**Alexandria, LA 71303**
**(318) 619-7755**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Red River Bank**

**SAVOIE, Judge.**

The Succession of Dinesh Shaw, M.D. (Succession) appeals the judgment of the trial court, granting Red River Bank's (RRB) exception of no right of action and dismissing the Succession's claims. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On November 9, 2015, Dr. Dinesh Shaw became a member of the Alexandria Investment Group, L.L.C. (AIG), along with numerous other members. AIG co-owned and operated a hotel and convention center located at 2225 MacArthur Drive and also owned a tract of unimproved property located at 1810 Air Base Road. At the time the operating agreement was signed, Dr. Shaw was in the final stages of a fatal neurological disease called Amyotrophic Lateral Sclerosis, more commonly known as ALS or Lou Gehrig's Disease. Dr. Shaw died on May 15, 2016, as a result of the disease. On May 19, 2016, John W. Munsterman was appointed as the Independent Executor of Dr. Shaw's succession.

Dr. Shaw's percentage of ownership at the time of his death was 15 2/7%. The operating agreement provides that, in the event of the death of a member, AIG shall purchase the ownership interest of the deceased member for the Death Purchase Price (DPP). The operating agreement further provides that AIG shall pay, within ninety days following receipt of notice of death, twenty percent (20%) of the DPP to the member's succession representative, with the remaining eighty percent (80%) to be paid in equal monthly installments over a five-year period with an interest rate of one percent (1%) above the per annum interest rate paid on thirty-year treasury bills.

On June 7, 2016, Mr. Munsterman sent an e-mail to the attorney for AIG, advising that Dr. Shaw had passed away, attaching a copy of Dr. Shaw's Death

Certificate and an order appointing Mr. Munsterman as the Independent Executor of Dr. Shaw's estate. Mr. Munsterman, in a telephone conversation, also explained to Dr. Reymond Meadaa, the managing member of AIG, that he believed the operating agreement provided for a mandatory buyout of Dr. Shaw's ownership interest in AIG upon his death. However, Dr. Meadaa advised that he believed the buyout to be optional. After some back and forth, Mr. Munsterman, in his position as Independent Executor of the estate of Dr. Dinesh Shaw, filed a Petition to Recover Payment of Membership Interest on October 18, 2016, alleging the above facts. He further alleged that the appraised value of AIG's assets at the date of death was $7,000,000. In an amending petition that number was increased to $8,600,000, with Dr. Shaw's portion alleged to be $1,314,571.42. AIG filed an Answer denying the allegations, stating the operating agreement speaks for itself.

On May 14, 2017, RRB filed a Petition of Intervention. RRB is the primary creditor of AIG, with a first-ranked security interest in substantially all of AIG's assets. It is also the holder of a commercial guaranty issued by AIG's members. In the intervention, RRB alleged that AIG is insolvent and operating at a deficit. The intervention further alleged that, on February 29, 2016, AIG executed a promissory note, held by RRB, in the principal amount of $5,500,000. This note is secured by a Multiple Indebtedness Mortgage filed and recorded in the records of Rapides Parish, Louisiana, on March 1, 2016, under File Number 1570714 in Mortgage Book 2924, at Page 703. This mortgage applies to the property located at 2225-2301 MacArthur Drive, Alexandria, Louisiana.

RRB stated in its intervention that Dr. Shaw absolutely and unconditionally guaranteed full and punctual payment and satisfaction of AIG's indebtedness to

2

RRB when he issued the commercial guaranty. RRB argued that the Succession petition to recover conflicts with the covenants of the guaranty.

Thereafter, on May 18, 2017, RRB filed an Exception of No Right of Action alleging that, based on provisions in the commercial guaranty, the Succession's claim has been assigned to the bank and that it does not belong to the Succession or its heirs. As such, the Succession has no right of action. By judgment dated August 7, 2017, the trial court granted RRB's exception and dismissed the Succession's claims. The Succession now appeals.

## LAW AND DISCUSSION

A peremptory exception of no right of action poses a question of law and is reviewed de novo. *Washington Mut. Bank v. Monticello*, 07-1018 (La.App. 3 Cir. 2/6/08), 976 So.2d 251, *writ denied*, 08-530 (La. /25/08), 978 So.2d 369.

. . . .

In Louisiana, an exception of no right of action is raised through a peremptory exception pursuant to La.Code Civ.P. art. 927. The exception's function "is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit." *Reese v. State Dep't of Pub. Safety & Corrs.*, 03-1615, pp. 2-3 (La. 2/20/04), 866 So.2d 244, 246. The supreme court has noted that when reviewing a trial court's ruling on an exception of no right of action, an appellate court "should focus on whether the particular plaintiff has a right to bring the suit and is a member of the class of persons that has a legal interest in the subject matter of the litigation, assuming the petition states a valid cause of action for some person." *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 10–2267, 10–2272, 10–2275, 10–2279, 10–2289, p. 7 (La. 10/25/11), 79 So.3d 246, 256. The burden of proof rests with the movant. *Montgomery v. Lester*, 16-192 (La.App. 3 Cir. 9/28/16), 201 So.3d 966, *writ denied*, 16-1944 (La. 12/16/16), 212 So.3d 1173. Evidence introduced in support of a peremptory exception is governed by La.Code Civ.P. art. 931, which provides, in pertinent part: "On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." Additionally, the court begins its analysis on an exception of no right of action "with an examination of the pleadings." *Howard v.*

*Adm'rs of Tulane Educ. Fund*, 07-2224, pp. 17-18 (La. 7/1/08), 986 So.2d 47, 60.

*Leone v. Ware*, 17-638, pp. 1-3 (La.App. 3 Cir. 5/2/18), ___So.3d___, ___.

The pleadings show that the Succession is attempting to recover Dr. Shaw's membership interest in AIG at the time of his death, as discussed in the operating agreement. The operating agreement states, in pertinent part:

10.3  <u>Death of a Member</u> –

10.3.1.    If a Member dies, then the Company shall purchase the Ownership Interest of the deceased Member for the Death Purchase Price (defined below). As used in this Section 10.3, the term "Death Purchase Price" shall mean the appraised value in the Company's multiplied by the Ownership Interest percentage of the deceased Member. The deceased Member's presumed succession representative shall immediately give written notice to the Company of the death of the Member (the "Death Notice"). If the Death Notice is not timely given, the Company may give such notice which shall also constitute the Death Notice.

10.3.2    Within ninety (90) days following the Death Notice, at a reasonable date, time and place set by the Company:

(i)    the Company shall pay, in cash to the Member's presumed succession representative (or the heirs and legatees to the extent put in possession of the Ownership Interest of the Deceased Member ), twenty (20%) percent of the Death Purchase Price for the Ownership Interest with the remainder to paid in equal monthly installments over a five (5) year period at the interest rate per annum being paid on thirty (30) year treasury bills at the time of the Death Notice plus one (1%) percent; provided, however, that if at any time during such five (5) year period the Company is paying one or more Members, or the Members' curators, trustees, etc., as the case may be, then the payments to all Members, or the Members' curators, trustees, etc., as the case may be, shall be reduced by one-half and paid in equal monthly installments over a ten (10) year period instead;

(ii)    the deceased Member's presumed succession representative shall deliver to the Company the Ownership Interest, free and clear of all liens, charges, and encumbrances other than those created by this

4

> Agreement, together with proof of the right of the person to transfer ownership of such Ownership Interest; and

> (iii) the deceased Member's presumed succession representative shall immediately pay the outstanding balance of any indebtedness owed by the deceased Member to the Company.

RRB argues that Dr. Shaw assigned his right to recover to RRB by way of the Commercial Guaranty that he signed to secure the Multiple Indebtedness Mortgage, and, therefore, the Succession has no right of action. The Commercial Guaranty states:

> **GUARANTOR'S SUBORDINATION OF RIGHTS**. . . .Guarantor hereby assigns to Lender all claims which it may have or acquire against Borrower or any assignee or trustee of Borrower in bankruptcy; provided that, such assignment shall be effective only for the purpose of assuring to Lender full payment of Borrower's indebtedness guaranteed under this Guaranty.

> **GUARANTOR'S RECEIPT OF PAYMENT.** Guarantor further agrees to refrain from attempting to collect and/or enforce any of Guarantor's collection and/or reimbursement rights against Borrower (or against any other guarantor, surety or endorser of Borrower's Indebtedness), arising by way of subrogation or otherwise, until such time as all of Borrower's Indebtedness that then remains is fully paid and satisfied. . . .

The Commercial Guaranty lists Dr. Dinesh Shaw as the Guarantor, AIG as the Borrower and RRB as the Lender. Dr. Shaw signed the Commercial Guaranty on February 29, 2016.

The Succession counters that the assignment in the Commercial Guaranty was illegal and contrary to Section 10.1 of the Operating Agreement, which states:

> Restrictions on Transfer – The Members shall have no right to sell, transfer, convey, alienate, donate, encumber, pledge or otherwise transfer, dispose of or hypothecate all or part of their Ownership Interests, including any transfer resulting from the divorce of a Member, (a "Transfer") except upon a vote of seventy-five (75%) percent of the Ownership Interest of the Members. Notwithstanding the foregoing, after written notice to the other Members and the Company, a Member may transfer all or part of his or her Ownership

5

Interest to a trust, corporation, or other entity created by the Member solely for estate planning purposes and/or controlled by the transferring Member.

The Succession argues that "Ownership Interests" has the same meaning as "Membership Interests" for the purposes of this provision. It is the Succession's contention that, because there was no notice of a meeting and no meeting amending Section 10.1 of the Operating Agreement, there has been no valid amendment to the Operating Agreement. Therefore, it asserts Dr. Shaw could not have transferred any rights in the Commercial Guaranty.

We find no validity in this argument. Dr. Shaw did not transfer his "Membership Interest" or "Ownership Interest" in the Commercial Guaranty. Rather, he assigned his rights to any claims he may have against AIG. In this respect, the assignment does not exist in perpetuity. Instead, the assignment "shall be effective only for the purpose of assuring to Lender full payment of Borrower's indebtedness guaranteed under this Guaranty," at which point the Succession's claims will revert to the Succession.

The Succession next argues that the trial court erred in finding that the language of the guaranty was unambiguous. "A contract of guaranty is equivalent to a contract of suretyship, and the two may be used interchangeably." *Cottonport Bank v. DD Group, Inc.*, 06-328, p. 2 (La.App. 3 Cir. 9/27/06), 941 So.2d 90, 92. "Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." La.Civ.Code art. 3035. "Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent, and courts must enforce

the contract as written. La.Civ.Code art. 2046. In such circumstances, the question of contractual interpretation is answered purely as a matter of law, as is the determination of whether a contract is ambiguous or not. *Sims v. Mulhearn Funeral Home, Inc.*, 07-54 (La. 5/22/07), 956 So.2d 583.

The words in the Commercial Guaranty provisions are clear and explicit and do not lead to absurd consequences. Consequently, we do not find the contract provisions at issue to be ambiguous. Therefore, we need not look to the intent of the parties in order to interpret the contract.

We find most compelling the language found under the provision "**GUARANTOR'S RECEIPT OF PAYMENT**," wherein the Guarantor (Dr. Shaw) agreed to refrain from attempting to collect or enforce his own collection and reimbursement rights against AIG "until such time as all of [AIG's] Indebtedness that then remains is fully paid and satisfied." We find that the facts of this case fall under this provision. The Succession is attempting to collect from AIG the DPP of Dr. Shaw's Ownership Interest prior to AIG's indebtedness being fully satisfied. This action is clearly prohibited under the terms of the Commercial Guaranty, to which Dr. Shaw agreed. As such, we find that the Succession does not have a right of action to recover at this time, based on the prematurity of the claim.

## DECREE

For the foregoing reasons, the judgment of the trial court, granting Red River Bank's Exception of No Right of Action and dismissing the claims of the Succession of Dinesh Shaw, M.D. is affirmed. All costs of this appeal are assessed to the Succession of Dinesh Shaw, M.D.

**AFFIRMED.**

7