# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 5, 2025

Lyle W. Cayce
Clerk

No. 24-30366

_____

Suzanne Wimsatt,

*Plaintiff—Appellant*,

*versus*

Nidal Jaber,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CV-1012

_____

Before Wiener, Stewart, and Southwick, *Circuit Judges*.

Per Curiam:[*]

Relationships, business or otherwise, often end. Suzanne Wimsatt and Nidal Jaber's short-term rental venture was no exception. They acquired three properties, forming LLCs and bank accounts for each. To bypass new city restrictions, they transferred one property to Jaber for a homestead exemption. Over a year later, Jaber sold the property without Wimsatt's

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

consent. She sued. He moved for summary judgment and won. This case is now before us on appeal. Finding no error, we AFFIRM.

## I.

Wimsatt and Jaber collaborated on a business involving short-term rental properties in New Orleans from 2015 to 2021. Their working relationship was informal, and no written partnership agreement existed. Wimsatt, a licensed CPA, managed the bookkeeping, while Jaber handled property management. Throughout their collaboration, three properties were purchased and titled under separate LLCs: 3101 Palmyra, LLC, 2630 Peniston, LLC, and 2106 Josephine, LLC. Each LLC was wholly owned by Laurissa LLC, which was solely controlled by Wimsatt. The LLCs were named after the respective properties for which they held title.

In 2020, New Orleans enacted new short-term rental regulations requiring property owners to claim a homestead exemption for eligibility. To sidestep this new rule, the parties transferred title to the Palmyra property from 3101 Palmyra, LLC to Jaber via a January 2020 quitclaim deed. The deed was executed as an authentic act, signed by Wimsatt as member-manager of 3101 Palmyra, LLC, Jaber, two witnesses, and a notary public. The stated consideration was Jaber's agreement to assume responsibility for taxes and mortgage payments on the property.

In April 2021, Jaber sold the Palmyra property for $645,000 without informing Wimsatt. Following the sale, Jaber retained the proceeds, claiming entitlement based on unresolved financial disputes with Wimsatt. Subsequently, Wimsatt sued Jaber in the Eastern District of Louisiana, alleging fraud, breach of fiduciary duty, simulation, and conversion. She claimed that the quitclaim deed was a simulated sale executed solely to comply with the city's regulations, arguing that the Palmyra property remained partnership property. Jaber moved for summary judgment. The

district court granted Jaber's motion. Specifically, the trial court held that the Palmyra property was legally owned by 3101 Palmyra, LLC until its valid transfer to Jaber and that Wimsatt failed to provide competent evidence rebutting the quitclaim deed's authenticity. Additionally, the court noted that Wimsatt lacked a right of action for damages belonging to the LLCs. Wimsatt timely appealed.

## II.

Sitting in diversity, we apply Louisiana substantive law. *See Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 294 (5th Cir. 2009).

Summary judgment is suitable when "the movant shows that there is no genuine dispute of any material fact, and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Such a dispute occurs when "a reasonable jury could return a verdict for the nonmoving party." *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 926 (5th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When a fact might affect the outcome of the case, it is material. *Id.* In reviewing the record, we "draw all reasonable inferences in favor of the nonmoving party" and refrain from making credibility determinations or weighing the evidence. *Vote.Org v. Callanen*, 89 F.4th 459, 469 (5th Cir. 2023).

Where the nonmovant shoulders the burden of proof at trial, as Wimsatt does here, the movant need only point to "an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). This shifts the burden to the nonmovant to supply competent evidence of a material factual dispute. *Id.* "Speculative theories" cannot defeat summary judgment. *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023). Nor can conclusory allegations, unsubstantiated assertions, or "a scintilla of evidence." *See Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023).

No. 24-30366

Well-pleaded factual allegations in a verified complaint can serve as summary-judgment evidence—but only if they meet Rule 56(c)(4)'s standards. *See Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (then Fed. R. Civ. P. 56(e)). Rule 56(c)(4) requires affidavits or declarations to be based on personal knowledge, present admissible evidence, and demonstrate the declarant's competence to testify. Fed. R. Civ. P. 56(c)(4). Conclusory allegations fail this test. They are not evidence. *See Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 440 (5th Cir. 2005) (upholding a decision granting summary judgment to a defendant when the only evidence presented by the plaintiff consisted of conclusory allegations); *see also Marquez v. Woody*, 440 F. App'x 318, 322–23 (5th Cir. 2011) (unpublished) (explaining that "conclusory statements in [a] verified complaint are insufficient to overcome [a] motion for summary judgment").

## III.

The district court labored to determine what causes of action Wimsatt pressed as it was unclear from the complaint. Nonetheless, the district court determined that Wimsatt raised four causes of action in her complaint: (1) breach of fiduciary duty, (2) conversion, (3) "unlawful encumbrance of a partnership asset," and (4) "conversion of goodwill associated with the Airbnb account." On appeal, she abandons causes of action (3) and (4). Thus, we only consider her argument for causes of actions (1) and (2).

On appeal, Wimsatt presses several arguments: (A) There was a genuine dispute of material facts on whether 3101 Palmyra, LLC owned the Palmyra property, as the quitclaim deed was a simulated sale within the meaning of the Louisiana Civil Code; (B) the district court erred in determining that Wimsatt lacked a right of action to sue; and (C) she controverted Jaber's statements of uncontested facts, asserting they failed to

4

comply with Eastern District of Louisiana Local Civil Rule 56. We address each in turn.

## A.

We begin by addressing whether a genuine dispute of material fact exists regarding the ownership of the Palmyra property. Wimsatt argues that this property was either co-owned by the parties or belonged to their alleged partnership. 3101 Palmyra, LLC held record title to the property. Wimsatt, however, maintains this fact is not dispositive. She contends that the LLC acted merely as an agent for the purported partnership, rendering the property a partnership asset. Also, in her view, 3101 Palmyra, LLC transferring the title of the Palmyra property to Jaber amounted to a "simulated sale." The partnership, she contends, remained the true owner the entire time. We disagree.

We assume *arguendo* that Wimsatt and Jaber formed a partnership. But her argument still fails. The record does not support her first contention that the purported partnership truly owned the Palmyra property. Under La. Civ. Code art. 2806(A), a partnership cannot own real property unless the partnership agreement is in writing. Wimsatt concedes that she and Jaber did not have a written partnership agreement when the property was purchased or transferred to Jaber. Thus, the purported partnership never owned the Palmyra property.

Alternatively, Wimsatt argues that Jaber's April 2021 email forms a written partnership agreement under Article 2806(C), giving the partnership retroactive ownership of the Palmyra property. If true, the partnership, she says, would own the property outright. But Article 2806(C) demands more:

> Whenever any immovable property is acquired by one or more persons acting in any capacity for and in the name of any partnership which has not been created by contract as required

> by law, and *the partnership is subsequently created by contract in accordance with Title XI of Book III of the Civil Code*, the partnership's existence shall be retroactive to the date of acquisition of an interest in such immovable property, but such retroactive effect shall be without prejudice to rights validly acquired by third persons in the interim between the date of acquisition and the date that the partnership was created by contract.

LA. CIV. CODE. art. 2806(C) (emphasis added). Wimsatt also claims that the partnership had an equitable interest in the property or that she and Jaber personally owned the property under Louisiana law. The record, however, tells a different story. The quitclaim deed shows that Jaber acquired the property in his name—not the partnership's. No evidence suggests otherwise, nor has Wimsatt provided any.

Additionally, under LA. CIV. CODE. art. 1839, "[a] transfer of immovable property must be made by authentic act under private signature." We have applied this rule to partnerships. *See, e.g.*, *Schmidt v. J-Lu Co., L.L.C.*, 598 F. App'x 257, 258 (5th Cir. 2015) (unpublished), *as revised* (Jan. 27, 2015) (noting that under LA. CIV. CODE. art. 1839 "the transfer of immovable property to a partnership still requires a writing"). Wimsatt offers no such writing. Recall that the quitclaim deed shows that the transfer was to Jaber, in his personal capacity. As a result, her theory fails.

To be sure, the January 2020 quitclaim deed transferring title to Jaber was executed as an authentic act. Under Louisiana law, an authentic act requires execution before a notary and two witnesses, with all parties signing. *See* LA. CIV. CODE. art. 1833. The deed satisfies these requirements. It was executed before notary Eric Oliver Person; signed by 3101 Palmyra, LLC (represented by Wimsatt) and Jaber; and witnessed by Pamela H. Person and Tabitha R. Burgess. Wimsatt provides no evidence to dispute its validity, failing to meet her evidentiary burden. *See Lindsey*, 16 F.3d at 618.

6

We turn to whether this transfer of title from 3101 Palmyra, LLC to Jaber was a simulated sale. A simulation occurs when an instrument conceals the parties' true intent. *See* LA. CIV. CODE. art. 2025. If the parties intend the contract to produce no effects between them, the simulation is absolute, regardless of its impact on third parties. LA. CIV. CODE. art. 2026. A simulated sale transfers no ownership—it is a "sham" where the parties lack good faith intent to effectuate a true transfer. *See Matter of Zedda*, 103 F.3d 1195, 1204 (5th Cir. 1997).

Wimsatt calls the sale to Jaber a simulation. She rests her case on three points: Jaber paid no consideration; she continued paying property taxes and mortgages after the sale; and Jaber has not disputed her account. None of this holds. First, the record shows that Jaber has disputed her version of events, and often. Second, her claim that she kept paying taxes and mortgages after the sale surfaces for the first time on appeal, and therefore she forfeits that argument. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). Third, her assertion that Jaber paid no consideration comes with no record citation. No evidence means no case. *Cf. Lindsey*, 16 F.3d at 618. Wimsatt's theory thus fails.

For these reasons, we hold that no genuine dispute of material fact exists as to the ownership of the Palmyra property.

**B.**

We next address whether Wimsatt had a right of action in this case. Wimsatt says yes. She contends that either she and Jaber co-own the Palmyra property, or the presumed partnership does. That is because, in her estimation, the transfer of the property was a simulation. This simulation, according to her, affords her a right of action to sue for damages. But as discussed, *supra* Part III.A, the transfer of the Palmyra property was not a simulation. We thus reject her argument.

It is hornbook law that corporations and partnerships are distinct from their members. *See* 18A Am. Jur. 2d Corporations § 717 (noting that corporations are distinct legal entities from their agents, officers, shareholders, and employees). What a corporation owns is not its members to take. What it owes is not their burden to bear. *See id.* This doctrine has long-standing pedigree, rooted in common law and civil law. *See generally* John Dewey, The Historic Background of Corporate Legal Personality, 35 Yale L.J. 655 (1926) (tracing the doctrine's root to Roman civil law and early common law). In legal parlance, we call this the corporate veil. It may be pierced, however. *See Anderson v. Abbott*, 321 U.S. 349, 362 (1944). Thus, a party cannot claim a corporation's asset while evading its liability.

The Louisiana Civil Code has recognized this rule:

> A natural person is a human being. A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership. The personality of a juridical person is distinct from that of its members.

La. Civ. Code art. 24. The Supreme Court of Louisiana has also recognized this longstanding principle. *See, e.g.*, *Ogea v. Merritt*, 130 So.3d 888, 895–95 (La. 2013) ("Therefore, as a general proposition, the law considers an LLC and the member(s) comprising the LLC, as being wholly separate persons.").

A partnership is a "juridical person, distinct from its partners." La. Civ. Code art. 2801. Likewise, "[a] member shall have no interest in limited liability company property." La. Stat. Ann. § 12:1329. Members of an LLC "own[] no direct, personal right of action to enforce the entity's claim." *Johnston v. Vincent*, 2021-01196, p. 35 (La. 2/1/23); 359 So. 3d 896, 920. Louisiana courts uniformly hold that members cannot sue individually for damages suffered by the LLC. *Id.* (collecting cases). Losses tied to a

decline in share value or harm to the LLC's assets are "indirect" and belong solely to the entity. *Id.* at 921. In short, indirect claims are the LLC's, not the members'.

Here, Wimsatt fails to prove that her breach of fiduciary duty and conversion claims belong to her, not 3101 Palmyra, LLC. The record also shows otherwise. Before the January 2020 quitclaim, 3101 Palmyra, LLC owned the Palmyra property—not Wimsatt. Louisiana law leaves no room for doubt. Wimsatt has "no interest" in 3101 Palmyra, LLC's property. *See* La. Stat. Ann. § 12:1329. Any harm from Jaber's alleged misconduct would have affected the LLC alone. *See Johnston*, 359 So. 3d at 920. Damage to an LLC's assets is its loss, not its member's. *Id.* at 921. Her claims are therefore derivative, not individual. And a right of action, if it exists here, belongs to 3101 Palmyra, LLC—not her.

Wimsatt also relies on *Montgomery v. Lester* to argue that when an LLC nominally owns property, members may personally sue for injury to it. 2016–192 (La. App. 3 Cir. 9/28/16), 201 So. 3d 966. *Montgomery* does not support her position. She misreads that case. The court there held that "[t]here was no countervailing testimony that the Montgomerys were not the owners, nor was there any testimony that [the LLC] was the owner." *Id.* at 970. As that court further noted, "Based upon our review of the record, we find that the only direct evidence on the issue of ownership is the testimony of Jim and Natalie Montgomery that they were the owners . . . ." *Id.* at 971. The LLC's ownership was not nominal; it was nonexistent. Here, by contrast, the record shows that 3101 Palmyra, LLC owned the Palmyra property. Thus, her reliance on *Montgomery* is misplaced, and that case does not control here.

No. 24-30366

For these reasons, we hold that Louisiana law does not afford Wimsatt a "personal right of action to enforce [3101 Palmyra, LLC]'s claim here." *See Johnston*, 359 So. 3d at 920.[1]

## C.

We now address Wimsatt's claim that the district court erred in admitting Jaber's statement of uncontested facts under Eastern District of Louisiana Local Rule 56. She argues that she controverted these facts and that Jaber's statement failed to comply with the rule. The record says differently.

Eastern District of Louisiana Local Rule 56.2 requires that a party opposing summary judgment submit "a separate and concise statement of the material facts which the opponent contends present a genuine issue." Without it, the moving party's facts are deemed admitted. *See* E.D. La. Loc. Civ. R. 56.2. Here, Wimsatt did not comply with the local rule. Although, she included an exhibit titled "Statement of Contested Facts," with her opposition, that exhibit failed to dispute Jaber's claims and merely reiterated her opposition arguments in list form without disputing Jaber's facts. His facts are thus properly deemed under the local rule, and her argument fails. On these grounds, the district court did not err in admitting Jaber's statement of uncontested facts.

Wimsatt also claims that Jaber's statement did not comply with Local Rule 56. But she did not argue this in her opposition to the motion or at any

---

[1] In her principal brief, Wimsatt does not advance her fraud claim, though she references it under her "Issue 4" heading. Instead, she limits her discussion to her breach of fiduciary duty and conversion claims. By omitting caselaw and any substantive argument, she has forfeited the issue. *See United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006) ("Inadequately briefed issues are deemed [forfeited]."). We, therefore, do not address it here.

10

No. 24-30366

other time in the district court. She thus forfeits this argument. *See Am. Precision Ammunition, L.L.C. v. City of Min. Wells*, 90 F.4th 820, 827 n.6 (5th Cir. 2024) ("Arguments not raised in district court will not be considered absent extraordinary circumstances." (quoting *Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497, 503 n.6 (5th Cir. 2012)).

**IV.**

For the reasons stated herein, we AFFIRM.