# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 05-82

VERMILION HOSPITAL, INC.

VERSUS

JOHN PATOUT, ET AL.

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 82080
HONORABLE EDWARD RUBIN, DISTRICT JUDGE

**************
## SYLVIA R. COOKS
## JUDGE
**************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks and J. David Painter, Judges.

**AFFIRMED.**

**D. Reardon Stanford**
**Hoyt, Hodge & Stanford, L.L.C.**
**315 South College Road**
**Lafayette, LA 70503**
**(337) 234-1012**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Vermilion Hospital, Inc.**


**Nicholas Gachassin, III**
**Danielle E. DeKerlegand**
**The Gachassin Law Firm**
**P.O. Box 80369**
**Lafayette, LA 70598-0369**
**(337) 235-4576**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **John Patout and PsychManagement Partners, L.L.C.**

**F. Douglas Wimberly**
**Cloyd, Wimberly & Villemarette, L.L.C.**
**900 South College Road, Suite 200**
**P.O. Box 53951**
**Lafayette, LA 70505-3951**
**(337) 289-6906**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Acadia-St. Landry Hospital Service District**

**COOKS, Judge.**

Vermilion Hospital appeals the trial court's grant of the defendants' exception of no cause of action, dismissing its claims with prejudice. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Acadia-St. Landry Hospital is a hospital located in Church Point, Louisiana, that is managed by the Board of Commissioners for the Acadia-St. Landry Hospital Service District. In the late 1990's, Acadia-St. Landry Hospital began operating at a loss. Due to this financial situation, it was recommended that it seek "Critical Access Hospital" (CAH) status. Such status would increase the medicare reimbursement payments to the hospital, and could help alleviate its financial concerns.

Acadia-St. Landry Hospital maintained its own psychiatric unit that was managed by PsychManagement Partners, L.L.C., which was wholly owned by John Patout. However, according to then-existing Medicare regulations, a hospital could not obtain CAH status if it also had a "distinct part psychiatric unit." Thus, Acadia-St. Landry could not maintain its own psychiatric unit if it wished to acquire CAH status. However, the hospital could obtain CAH status if it leased space to another provider who could provide psychiatric services to its patients. Under such a scenario, psychiatric services would still be available at Acadia-St. Landry Hospital.

In furtherance of this plan, Vermilion Hospital, Inc., which owns and operates Vermilion Hospital, a psychiatric hospital in Lafayette Parish, was contacted about leasing space from Acadia-St. Landry Hospital and providing psychiatric services. Vermilion Hospital made a proposal to lease the space. Vermilion Hospital received no response to the proposal, and submitted a second proposal. This proposal also has not been acted upon.

Vermilion Hospital filed suit alleging PsychManagement Partners and John Patout blocked the acceptance of Vermilion's proposal. Acadia-St. Landry Hospital Service District was also named as a defendant. Vermilion Hospital alleged Patout was hired by Acadia-St. Landry's Board of Supervisor's as "Hospital Chief Executive Officer and/or Consultant to the Board." They contended in this role Patout's "responsibility was to review the operations and management of the Hospital and make recommendations to the Board regarding same." Vermilion Hospital asserted the defendants "conspired to block the Hospital's attainment of CAH status and to reject and/or refuse to accept the Vermilion proposals, despite the fact that the proposals were in the best interests of the Acadia-St. Landry Hospital to prevent Patout and/or PsychManagement from losing its ongoing contact with the Hospital." Vermilion contended this arrangement was a clear and obvious conflict of interest and unethical under the law, and amounted to a conspiracy that injured Vermilion Hospital.

In response to the suit, Defendants filed exceptions of vagueness and no cause of action against Vermilion Hospital. Additionally, Patout and PsychManagement Partners filed an exception of prescription and a motion for sanctions. After a hearing, the trial court granted the exception of no cause of action and dismissed Vermilion's claims with prejudice. The trial court noted during the hearing that it was a "giant leap" to say that, in the role of consultant, defendant principally engaged in a conspiracy to injure Vermilion. The judgment was silent as to the other exceptions. Vermilion appealed the trial court's judgment granting the exception of no cause of action.

**ANALYSIS**

A peremptory exception of no cause of action presents a question of law, which

we review *de novo*, applying the same standard as that applied by the trial court. *Craft v. Allstate Ins. Co.*, 95-160 (La.App. 3 Cir. 8/30/95), 663 So.2d 116, *writ denied*, 95-2403 (La. 12/15/95), 664 So.2d 454. The exception tests the legal sufficiency of the petition, and is triable on the face of the papers. *City of New Orleans v. Board of Dirs. of La. State Museum*, 98-1170 (La. 3/2/99), 739 So.2d 748. No evidence is admissible in support of or in opposition to the exception. *Jones v. Tezeno*, 99-1693 (La.App. 3 Cir. 3/1/00), 758 So.2d 896. To withstand the exception, the petition must set forth the material facts upon which the cause of action is based. *Kahn v. Jones*, 95-259 (La.App. 3 Cir. 11/2/95), 664 So.2d 700. A petition which simply sets forth factual conclusions without supplying facts to support those conclusions is insufficient. *Id.*

Vermilion argues on appeal that the conspiratorial conduct of the defendants was a violation of public policy constituting an unfair trade practice; and it therefore states a cause of action. The Louisiana Unfair Trade Practices and Consumer Protection Act (LUTPA) states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La.R.S. 51:1405. It confers a right of action on any person who "suffers any ascertainable loss of money or movable property, corporeal or incorporeal," for actual damages resulting from unfair trade practices, in addition to court costs and attorney fees. La.R.S. 51:1409. The determination of what is an unfair trade violation must be made on a case-by-case basis. *Copeland v. Treasure Chest Casino, L.L.C.*, 01-1122 (La.App. 1 Cir. 6/21/02), 822 So.2d 68.

The jurisprudence has held that there is no LUTPA violation when the alleged conduct is simply "the appropriate exercise of good business judgment and the proper workings of free enterprise." *Monroe Medical Clinic, Inc. v. Hospital Corp. of*

*America*, 522 So.2d 1362, 1365 (La.App. 2 Cir. 1988). Stated another way, "[b]usinesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious." *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir.1993).

Except for the Louisiana First Circuit Court of Appeals, Louisiana courts, both state and federal, have uniformly held the personal right of action granted under LUTPA applies only to direct consumers or to business competitors. See *National Gypsum Co. v. Ace Wholesale, Inc.*, 98-1196 (La.App. 5 Cir. 6/1/99), 738 So.2d 128; *Monroe Medical Clinic, Inc.*, 522 So.2d 1362; *Gil v. Metal Serv. Corp.*, 412 So.2d 706 (La.App. 4 Cir.), *writ denied*, 414 So.2d 379 (La. 1982); *Tubos de Acero de Mexico, S.A. v. American Int'l. Inv. Corp., Inc.*, 292 F.3d 471 (5th Cir. 2002); *Cashman Equip. Corp. v. Acadian Shipyard, Inc.*, 2002 WL 1433876 (E.D.La. 2002) . Only the first circuit has given the statute a broader reading, and held that *any* person who suffers any ascertainable loss as a result of an act or practice declared unlawful by La.R.S. 51:1405 may bring an action individually but not in a representative capacity to recover actual damages. *See Plaquemine Marine, Inc. v. Mercury Marine*, 03-1036 (La.App. 1 Cir. 7/25/03), 859 So.2d 110; *Capitol House Preservation Co. v. Perryman Consultants, Inc.*, 98-1514 (La.App. 1 Cir. 12/10/98), 725 So.2d 523, *writ denied*, 99-548 (La. 4/9/99), 740 So.2d 637; *Jarrell v. Carter*, 577 So.2d 120 (La.App. 1 Cir.), *writ denied*, 582 So.2d 1311 (La.1991); *Roustabouts, Inc. v. Hamer*, 447 So.2d 543 (La.App. 1 Cir.1984). However, we note, although several panels on the first circuit have given an expansive interpretation to the statute's protective reach, other panels have decided to follow the other circuits more restrictive holding that the personal right of action granted under LUTPA applies only to direct consumers or to business competitors. *See Thibaut v. Thibaut*, 607 So.2d

-4-

587 (La.App. 1 Cir. 1992), *writ denied*, 612 So.2d 38 (La. 1993). We elect to follow the prevailing jurisprudence. Thus, Vermilion must show that it is either a consumer or business competitor of PsychManagement and John Patout. Likewise, it must show it is either a consumer or business competitor of Acadia-St. Landry Hospital. Nothing in Vermilion's petition suggests that it qualifies as a consumer of any services provided by these defendants. Thus, to satisfy the standing requirement of LUTPA, Vermilion must establish it engages in business that competes directly or indirectly with the defendants as a business competitor. *Tubos de Acero de Mexico, S.A.*, 292 F.3d at 480.

While defendants elected to file only the exception of no cause of action, La.Code Civ.P. art. 927(B) provides this court may recognize a no right of action exception on its own motion. The exception of no right of action and the exception of no cause of action have different functions. As stated by our supreme court in *Babineaux v. Pernie-Bailey Drilling Co.*, 261 La. 1080, 1095-97, 262 So.2d 328, 333-34 (1972):

> There has been much discussion about the purpose of the exception of no right of action, and many attempts to differentiate that exception from the exception of no cause of action. One of the best statements of the definition of no right of action and of the basis of the distinction between it and no cause of action was given by the late Henry George McMahon: "The former (no cause of action) is used to raise the issue as to whether the law affords a remedy to anyone for the particular grievance alleged by plaintiff; the latter [no right of action] is employed (in cases where the law affords a remedy) to raise the question as to whether plaintiff belongs to the particular class in whose exclusive favor the law extends the remedy, or to raise the issue as to whether plaintiff has the right to invoke a remedy which the law extends only conditionally." McMahon, The Exception of No Cause of Action in Louisiana, 9 Tul.L.Rev. 17, 29-30. See also McMahon, Parties Litigant in Louisiana, 11 Tul.L.Rev. 529-30. . . .
>
> In *Bielkiewicz v. Rudisill*, 201 So.2d 136 (La.App. 3rd Cir.1967), Mr. Justice Tate of our court, then writing for the Court of Appeal, correctly stated the purpose of the exception of no right of action:

"The want of interest raised by the exception relates primarily to whether the particular plaintiff falls as a matter of law within the general class in whose favor the Law grants the cause of action sought to be asserted by the suit, with the factual evidence admissible being restricted as to whether this particular plaintiff does or does not fall within the general class having legal interest to sue upon the cause of action asserted." * * *

"In short, the objection of no right of action raises the question of whether the plaintiff has a legal interest in the subject matter of the litigation, *assuming (for the purpose of deciding the exception)* that a valid cause of action is pleaded by the petition. *LeSage v. Union Producing Co.*, 249 La. 42, 184 So.2d 727."

We turn first to address Vermilion's standing to assert a claim under LUTPA against the defendants.

**Standing: No Right of Action**

*I.     PsychManagement and John Patout*

LUTPA does not grant a right of action to every person or business entity that is a victim of unethical or unfair business practices.[1] To have standing under LUTPA, Vermilion must engage in business that competes directly or indirectly with PsychManagement as a business competitor. *Tubos de Acero de Mexico, S.A.*, 292 F.3d at 480. Vermilion's petition contradicts its allegation that "John Patout and PsychManagement Partners, L.L.C. are its competitors relative to providing psychiatric care." The petition discloses, at all relevant times, PsychManagement and John Patout, as a business, functioned solely as a management firm employed by Acadia-St. Landry Hospital, who owned and continues to own and operate a psychiatric unit as part of its hospital business. In addition to the allegation noted above, Vermilion's petition states:

---

[1] Vermilion alleges Acadia-St. Landry, in appointing John Patout as a consultant to the Board of Commissioners of the Hospital, created a conflict of interest prohibited by the Louisiana Code of Ethics. Not all violations of the Louisiana Code of Ethics give rise to a cause of action under LUTPA or the general tort law. Persons aggrieved by such conduct are permitted to file a complaint with the Louisiana Board of Ethics and to seek remedies or punishments available under the special provisions of the Code of Ethics.

13.

At the time, and, on information and belief, continuing to this day, the [Acadia-St. Landry] Hospital had a distinct part psychiatric unit at the hospital.

14.

At least as of July of 1992, this unit was managed by the Defendant, PsychManagement Partners, L.L.C., which company, on information and belief, is wholly owned by the Defendant, John Patout.

16.

This management was by way of contract between the applicable entity and/or Defendant, Patout, and the Hospital for a fee or other compensation.

Other than plaintiff's barebones allegation that "John Patout and PsychManagement Partners, L.L.C. are its competitors relative to providing psychiatric care," nothing in the petition suggests that PsychManagement and John Patout actually were engaged directly or indirectly in the business of providing psychiatric services to patients. We find Vermilion lacks standing to bring a LUTPA claim against PsychManagement and Patout because the petition fails to disclose that Vermilion and PsychManagement in fact are "competitors" under LUTPA. Although plaintiff alleges that PsychManagement and John Patout contracted to provide management services to Acadia-St. Landry by contract for "a fee or other compensation," the relationship between the parties is not thereby materially altered. PsychManagement is not engaged in the business of providing psychiatric care. Vermilion further alleges in its petition that "Patout made an unsuccessful bid (whether alone or in conjunction with other investors) to purchase Vermilion Psychiatric Hospital prior to the sale of said hospital to its current ownership." However, Patout did not acquire Vermilion nor is it alleged in the petition that Patout has owned or operated any other psychiatric care unit or at any point engaged in the business of providing psychiatric

care.  The petition, read in the light most favorable to the plaintiff, recites facts that identifies PsychManagement and Patout's role as falling within the classification of in-house management or independent management whose services are provided to Acadia-St. Landry Hospital by virtue of a contract of employment.  In either instance, these defendants are not providing psychiatric care.

In *National Gypsum Co.*, 738 So.2d 128, the appellate court found a distributor of a supplier's products was not a business competitor nor a consumer, and, therefore, was not within the class to which LUTPA provides a remedy.  It rejected the distributor's argument that it fit within the class of persons who have standing under LUTPA because "[b]y definition, a distributor has the potential to compete with the supplier by simply obtaining a different supplier of the same or similar products." *Id.* at 130.  Vermilion simply has failed to prove it is a business competitor of PsychManagement and Patout; and, thus, it lacks standing under LUTPA to bring a claim against these defendants.

II.     *Acadia-St. Landry Hospital.*

In the case of Acadia-St. Landry Hospital, it is apparent that Vermilion and Acadia-St. Landry are competitors under LUTPA.  Both hospitals are in the same business of providing psychiatric services.  Therefore, Vermilion has standing under LUTPA to file suit against Acadia-St. Landry Hospital.

**No Cause of Action**

Despite its standing to bring suit, Vermilion's petition does not set forth a viable cause of action under LUTPA against Acadia-St. Landry.  There is nothing in the provisons of LUTPA that requires Acadia-St. Landry to divest itself of ownership of the at issue psychiatric unit even if maintaining it is not economically prudent.[2]

---

[2]  Vermilion's own petition makes an argument that Acadia-St. Landry's action in not accepting Vermilion's proposal was, in fact, a reasonable, if not wise, business decision.  In

This case does not involve separate business entities competing to lease the Hospital's psychiatric facility. In its petition, Vermilion contends Acadia-St. Landry is operating at a loss and its decision to maintain its own psychiatric facilities is financially injurious to it. An unwise business decision does not in and of itself create an unfair trade practice. Such a decision, even if unwise, falls within the parameters of a permissible business judgment. Acadia-St. Landry Hospital Service District's decision to continue its existing contract with PsychManagement rather than restructure the hospital in an attempt to gain CAH status, is not a business choice LUTPA was designed to regulate.

### DECREE

For the foregoing reasons, the judgment of the trial court dismissing Vermilion's claims with prejudice is affirmed. Costs of this appeal are assessed against appellant, Vermilion Hospital.

**AFFIRMED.**

---

paragraph 43 of its petition, Vermilion states the defendants "have continued to conspire to prevent the Hospital from obtaining CAH status until such time as CAH status could be obtained without the necessity of cancelling the contract with PsychManagement Partners, L.L.C. and/or John Patout." This acknowledges that Acadia-St. Landry, in time, may have been able to obtain CAH status and still operate its own psychiatric unit deriving a net profit on its total operation. Clearly, this would provide a reasonable basis for its refusal to accept Vermilion's proposal.