# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 21-797 c/w 21-798

**MAYEHAUL TRUCKING, LLC, ET AL**

**VERSUS**

**SASOL CHEMICALS, LLC, ET AL**

**CONSOLIDATED WITH**

**SUPERIOR TRUCKING, LLC, ET AL**

**VERSUS**

**SASOL CHEMICALS, LLC, ET AL**

**\*\*\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 2016-2356 C/W 2016-5163
HONORABLE KENDRICK J. GUIDRY, DISTRICT JUDGE
**\*\*\*\*\*\*\*\*\*\*\*\***
**SYLVIA R. COOKS**
**CHIEF JUDGE**
**\*\*\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Chief Judge, John E. Conery and Charles G. Fitzgerald, Judges.

      **Conery, J., concurs in the result and assigns reasons.**
      **Fitzgerald, J., dissents and assigns reasons.**

                    **AFFIRMED.**

**Baggett, McCall, Burgess, Watson & Gaughan, LLC**
**Jake D. Bufford**
**P.O. Drawer 7820**
**Lake Charles, LA 70605-7820**
**Tel. (337) 478-8888**
**Fax (337) 478-8946**
**COUNSEL FOR PLAINTIFFS/APPELLANTS**
**Mayehaul Trucking, LLC, et al.**

**Simien Law Firm**
**Marshall J. Simien, Jr.**
**The Sanctuary**
**2131-A Fitzenreiter Road**
**Lake Charles, LA 70601**
**Tel. (337) 497-0022**
**Fax (337) 497-0203**
**COUNSEL FOR DEFENDANTS/APPELLEES**
**Sasol Chemicals (USA), LLC, Sasol Chemicals North America, LLC**
**and Michael Hayes**

**COOKS, Chief Judge**

## FACTS AND PROCEDURAL HISTORY

In 2012, Sasol Chemicals (USA), LLC (Sasol) set about to expand its Westlake facility with the construction of a nine-billion-dollar project for which it contracted with Flour Technip Integrated (Flour) to provide it with a turnkey facility. Sasol alleges under this contractual agreement Flour was obligated to design the facility, hire a general contractor for the project, provide oversight, and purchase goods and supplies for the construction of the project. Plaintiffs do not contradict these assertions. The subject lawsuits do not involve a contractual dispute between these parties.

Plaintiffs filed suit against Sasol, Michael Hayes (Hayes) individually, Kent Materials and/or Kent & Smith Holdings, LLC, (Kent and/or K&S) Gerard L. Smith individually, Tyler Smith individually, and Roosevelt "Tiger" Canty (Canty) individually. Plaintiffs' allegations include claims based upon detrimental reliance, kickbacks, and unfair trade practices allegedly actionable under the provisions of the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1401, *et seq*.

Plaintiffs set forth in their Petition several allegations which they assert form the basis for their detrimental reliance claim, to wit:

6.

During the finalization of purchases by SASOL of Mossville properties, SASOL began promising that local Mossville residents and businesses would be given opportunities to provide work and services on the temporary work needed for SASOL's expansion projects.

7.

Among the numerous projects was construction of a "cracking unit" project that would require hundreds of dump trucks to transport materials during the expansion.

8.

Numerous meetings and publications led Mossville, Westlake and other Louisiana dump truck owners to commit their trucks to the SASOL expansion project.

9.

Each of the Petitioners relied upon SASOL's promises to utilize local small and minority businesses in preference to non-area companies.

10.

SASOL conducted a series of meetings with residents of Mossville, Louisiana. Many, if not all of the meetings were held at the old Mossville School, where SASOL had set up its expansion "operations office," the Joshua Rigmaiden Recreation Center, and at the Lake Charles Civic Center.

11.

At several of these meetings, executives employed by SASOL discussed residents' concerns that SASOL was not following through with its published commitments to utilize Mossville residents, who were being displaced, in the temporary construction project.

12.

In late June of 2015, several of the Petitioners met with the Defendant, MICHAEL HAYES, seeking assurance that SASOL would utilize their trucking companies moving the millions of cubic yards of rocks, debris, soil, sand and other materials during the construction phases of the SASOL expansion.

13.

Based upon the numerous assurances given by MICHAEL HAYES, and other SASOL employees, the Petitioners began purchasing and/or upgrading dump trucks to place into operation at the site of this expansion project.

14.

MAYEHAUL TRUCKING, LLC, ADDED FOUR (4) dump trucks to its fleet of one (1), BBT CONSTRUCTION MANAGEMENT, LLC added two (2) dump trucks to its fleet of four (4), L.O. AUSAMA ENTERPRISES added two (2) trucks. All of the other Petitioners purchased a single dump truck to engage in operations of the expansion project of SASOL.

15.

All of the Petitioners' trucks were placed in the rotation and all worked those trucks every day, when hauling was available, including Saturdays and Sundays, when weather permitted.

The Petition then sets forth allegations concerning an alleged kickback scheme which Plaintiffs assert entitles them to damages against Sasol, and against Hayes, Tyler Smith (Smith), and Canty individually. In support of this claim Plaintiffs alleged Smith "contacted one of the Petitioners, demanding kickback payments to SMITH in order to be able to continue working their trucks on the project." Plaintiffs further alleged that it became known "within the trucking companies engaged on the project" that "those who paid, got work" and "those who didn't pay, didn't work." As to Hayes individually, Plaintiffs alleged they told him about Smith and Canty's alleged kickback scheme, but "HAYES turned a deaf ear to the Mossville Petitioners refusing to take any action." Plaintiffs further alleged in Paragraph (19) that "All of the Petitioners were eventually turned away from all hauling activities."

Next, Plaintiffs asserted in their Petition that the basis for their LUTPA claim against Sasol and Kent was the kickback scheme allegedly perpetrated by Smith and Canty who were employed by K&S Logistics. Plaintiffs seek to hold Sasol liable for damages as a result of Smith and Canty's alleged kickback scheme asserting that "SASOL intentionally failed to act on information of the kickbacks and other improper, illegal behavior by KENT." The petition additionally states,

> The Defendant, MICHAEL HAYES, in his capacity of Project Manager, was told directly of the kickback scheme and was provided with an audio recording of drivers talking about the need to pay kickbacks to "TIGER" in order to get trucks working. However, MICHAEL HAYES not only refused to take steps to remedy the problem or follow through with his and SASOL's promises to provide work for Mossville businesses, his refusal to take action caused an increase in the blackball affect keeping the Petitioners from working.

Plaintiffs further alleged in their petition in support of their LUTPA claim that,

> SASOL and KENT began a systematic plan to exclude all local truckers from the work, including all of the Petitioners. Further, once the Petitioners began complaining to SASOL and in particular to MICHAEL HAYES, SASOL and KENT began to systematically call the Petitioners late at night, prior to days wherein it was expected to rain. This was done to make an appearance of an attempt to put their trucks to work without the possibility of the Petitioners to actually work their trucks. Despite the complaints by the Petitioners of this unethical practice to MICHAEL HAYES, TIGER and other dispatchers continued to call truckers, the night before rain was expected.

Allegedly, Sasol's public relations person in charge of community outreach, Hayes, acted as the contact person with the local community. Plaintiffs alleged Hayes explained to the community the scope of the project and assured residents that Sasol welcomed local business participation in the project. They further alleged Hayes met with people in the community in public forums and assured residents that this project would provide a lot of work for local businesses and local contractors. Plaintiffs additionally alleged that on the strength of the public representations by Hayes they decided to purchase new and/or additional dump trucks to take advantage of the increased volume of work they anticipated would be created by this huge project. Plaintiffs asserted at the hearing that many dump truck owners/businesses entered into contracts with K&S Brokerage d/b/a K&S Logistics as the means to get work from the project for their dump trucks. But those brokerage agreements are not the subject of the matter before us. Plaintiffs do not allege any contractual relationship between Sasol and K&S Logistics, and they did not contradict Sasol's representation at the hearing that no such contractual relationship existed. Additionally, Plaintiffs admit that none of them entered into any contract with Sasol and their Petition does not allege otherwise.

Sasol filed exceptions of no cause of action and no right of action as to Plaintiffs' detrimental reliance claims, an exception of no right of action as to Plaintiffs' LUTPA claim, and an exception of no cause of action as to all claims brought by Plaintiffs against Hayes individually. The exceptions were filed in July of 2016, but the matter was not heard until September 20, 2021. The construction phase of the project was completed before the hearings on the motions that are subject of this appeal were had.

The trial court, after considering argument of counsel and hearing testimony, granted the Sasol Defendants' Exception of No Right of Action, "dismissing Plaintiffs' detrimental reliance and Louisiana Unfair Trade Practices and Consumer Protection Act claims . . . with prejudice[;]" granted the Sasol Defendants' Exception of No Cause of Action "dismissing Plaintiffs' detrimental reliance claims" with prejudice; and granted the Sasol Defendants' Exception of No Cause of Action "dismissing all of Plaintiffs' claims against Defendant, Michael Hayes, with prejudice[.]" The trial court further found Plaintiffs' claims for injunctive relief moot because the project was complete. The trial court also found Defendants' Exception of Vagueness or Ambiguity moot.[1]

Plaintiffs appeal only the trial court rulings granting the exceptions of no cause of action[2] dismissing the Sasol defendants and the exception of no right of action dismissing the Sasol defendants alleging three assignments of error:

---

[1]     The trial court previously, on October 12, 2021, signed a partial summary judgment granting the Kent defendants' Exception of No Right of Action on Plaintiffs' breach of contract claim concerning five of nineteen Plaintiffs and maintaining all remaining claims of the five Plaintiffs against the Kent defendants.

[2]     Plaintiffs in the consolidated case *Superior Trucking, LLC et al. vs. Sasol Chemicals, LLC*, Docket Number 21-798, filed an appeal with this court but did not brief any assignments of error therein nor has any party asserted any error in the ruling in that case regarding the Kent/K&S Defendants. This court, on 3/23/22 denied a motion to dismiss that appeal but held that Defendants abandoned such issues by failing to assert an assignment or error or brief any issue regarding the Kent Defendants.

1. The District Court erred in granting Sasol's Peremptory Exception of No Right of Action, dismissing Plaintiffs' claims under the Louisiana Unfair Trade Practices Act (LUTPA) against Sasol, finding that Plaintiffs must be direct consumers or business competitors of Sasol.

2. The District Court erred in granting Sasol's Peremptory Exception of No Right of Action, dismissing Plaintiffs' claims for detrimental reliance against Sasol because Plaintiffs did not have privity of contract with Sasol.

3. The District Court erred in granting Sasol's Peremptory Exception of No Cause of Action, dismissing Plaintiffs' detrimental reliance claims against the (*sic*) Sasol because Plaintiffs did not have a privity of contract with Sasol.

## LAW AND ANALYSIS

*No Right of Action, LUTPA*

A proper analysis of a peremptory exception of no right of action requires a court to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. La.Code Civ.P. art. 927; *Reese v. State Dep't of Pub. Safety & Corrs.*, 03-1615 (La. 2/20/04), 866 So.2d 244; *Indus. Co., Inc. v. Durbin*, 02-0665 (La. 1/28/03), 837 So.2d 1207. As stated in *Reese*, 866 So.2d at 246:

> The focus in an exception of no right of action is on whether this particular plaintiff has a right to bring the suit, *but it assumes that the petition states a valid cause of action for some person* and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation.

*See also Indus. Co., Inc.*, 837 So.2d at 1216. The court begins with an examination of the pleadings. *Howard v. Administrators of Tulane Educ. Fund*, 07-2224 (La. 7/1/08), 986 So.2d 47; *see also R.G. Claitor's Realty v. Juban*, 391 So.2d 394 (La.1980).

In *Rain CII Carbon, LLC v. Turner Indus. Grp., LLC*, 19-403, p. 22 (La.App. 3 Cir. 3/18/20), 297 So.3d 797, 813, *writ denied*, 20-774 (La. 10/20/20), 303 So.3d 319, we elaborated further regarding the standard of review:

> Typically, an exception of no right of action involves a question of law and appellate review is de novo. *Eagle Pipe* [*& Supply, Inc. v. Amerada Hess Corp.*, 10-2267 (La. 10/25/11)], 79 So.3d 246. When evidence is introduced in support of or in opposition to the exception,

> however, a trial court's findings of fact are subject to the manifest error-clearly wrong standard of review. *See London Towne Condo. Homeowner's Ass'n v. London Towne Co.*, 06-401 (La. 10/17/06), 939 So.2d 1227. In consideration of a trial court's ruling on such an exception, the appellate court considers "whether the particular plaintiff has a right to bring the suit and is a member of the class of persons that has a legal interest in the subject matter of the litigation, *assuming the petition states a valid cause of action for some person.*" [*Antonio*] *Le Mon* [*v. Nat. Football League*, 19-1264 (La. 9/6/19)], 277 So.3d [1166,] at 1167 (citing *Badeaux v. Southwest Computer Bureau, Inc.*, 05-0612 (La. 3/17/06), 929 So.2d 1211).

*Guidry v. Ave Maria Rosary & Cenacle, Inc.*, 21-507, pp. 27-29 (La.App. 3 Cir. 6/1/22), 341 So.3d 779, 797–98 (emphasis added).

> The supreme court has noted that when reviewing a trial court's ruling on an exception of no right of action, an appellate court "should focus on whether the particular plaintiff has a right to bring the suit and is a member of the class of persons that has a legal interest in the subject matter of the litigation, assuming the petition states a valid cause of action for some person." *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 10–2267, 10–2272, 10–2275, 10–2279, 10–2289, p. 7 (La. 10/25/11), 79 So.3d 246, 256. The burden of proof rests with the movant. *Montgomery v. Lester*, 16-192 (La.App. 3 Cir. 9/28/16), 201 So.3d 966, *writ denied*, 16-1944 (La. 12/16/16), 212 So.3d 1173. Evidence introduced in support of a peremptory exception is governed by La.Code Civ.P. art. 931, which provides, in pertinent part: "On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." Additionally, the court begins its analysis on an exception of no right of action "with an examination of the pleadings." *Howard v. Adm'rs of Tulane Educ. Fund*, 07-2224, pp. 17-18 (La. 7/1/08), 986 So.2d 47, 60.

*Leone v. Ware*, 17-638, pp. 2-3 (La.App. 3 Cir. 5/2/18), 246 So.3d 833, 835.

At the hearing on Defendants' exceptions counsel for Plaintiffs asserted that in an effort to foster better public relations with the Mossville community, "[Hayes] Sasol's PR person" began holding "town hall meetings." Contrary to counsel's assertions at the hearing that there were conversations with Plaintiffs at public meetings where they were told to "go buy some dump trucks, you know, go start your business" the Petition does not set forth any such factual allegations and

nothing was offered at the hearing to substantiate this assertion by counsel. Further, Plaintiffs admitted at the hearing they had no contractual relationship with Sasol or Hayes, and that several did not have contracts with K&S either.

At the hearing, counsel for Plaintiffs asserted that Hayes' refusal to do anything with Kent Materials about the kickbacks "makes him complicit" and that his complicity in Kent Material's unethical behavior through his "inaction" forms "a valid claim under the Louisiana Consumer Protection Act—or Unfair Trade Practices[.]" That, Plaintiffs say, is "where his individual culpability arises." The trial court concluded that none of the claims made in the Petition, and no argument put forth at the hearing, establishes any viable claim against Hayes individually. Allegations in the Petition and the representations made at the hearing set forth only that anything Hayes did was "as an agent for Sasol[.]" Thus, the trial court dismissed Hayes from the lawsuit and Plaintiffs have not appealed that ruling.

Plaintiffs' counsel then attempts to reach Sasol by asserting that "Sasol is on top of the totem pole. They can't simply say, look, this isn't an 'us' problem. They control everything that happens below them. [T]he buck stops with Sasol." But no evidence was put forth at the hearing to contradict Sasol's contention that it had a turnkey contract with Flour to spec and build the expansion facility and that Sasol had no contractual relationship with Plaintiffs and no control over the assignments for dump truck work on the project.

The trial court explained on the record at the hearing its reasons for granting Sasol's exception of no right of action on Plaintiffs' LUTPA claim. It remarked that it was more persuaded by this court's holding in *Vermilion Hospital*, *Inc. v. Patout*, 05-82 (La.App. 3 Cir. 6/8/05), 906 So.2d 688, than the supreme court's dicta in *Cheramie Services, Inc. v. Shell Deepwater Production*, 09-1633 (La. 4/23/10), 35 So.3d 1053. The trial court further explained its ruling was also based on the fact

8

that there was "no business relationship between truckers and Sasol directly. No contract. . . The contractual privity is missing. . . There's no evidence of direct consumer of the truckers of any Sasol products and the truckers are not business competitors of Sasol."

Plaintiffs' Petition does not set forth any factual allegations that would form the basis for a LUTPA claim by these Plaintiffs against Sasol. Nothing presented at the hearing raised any prospect for amending the pleadings against Sasol to form any basis in law for a justiciable claim under LUTPA against Sasol by these Plaintiffs. In *Vermilion Hosp*., *Supra*., we held that in order to present a LUTPA claim against a defendant such as Sasol, Plaintiffs must either be consumers of Sasol's product(s) or a direct competitor of Sasol. Plaintiffs are neither and they do not assert otherwise. *See also*, *Risk Management Services, L.L.C. v. Moss,* 09-632 (La.App. 5 Cir. 4/13/10), 40 So.3d 176, (Holding that a right of action exists under Louisiana Unfair Trade Practices Act (LUTPA) only for consumers or business competitors.) *writ denied*, 10-1103 (La. 9/3/10), 44 So.3d 683.

Taking all Plaintiffs' allegations as true, the petition mostly sets forth conclusory allegations without supporting facts and demonstrates that Plaintiff dump truck owners are not consumers of Sasol's products/services and in no form, shape or fashion are Plaintiffs in competition with Sasol's chemical processing facility. Thus, we find the trial court did not commit legal error nor did it manifestly err in granting Sasol's exception of no right of action as to Plaintiffs' LUTPA claims. Plaintiffs by their own allegations establish they are not market competitors with Sasol and are not consumers of Sasol's products.

Additionally, we may raise the exception of no cause of action on our own motion. La.Code Civ. P. art 927(B).[3] Taking Plaintiffs' allegations as true, it is clear that Plaintiffs do not state a cause of action under LUTPA. This court has held that "A [trade] practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious," and is determined by the courts on a case by case basis. *Acadiana Renal Physicians v. Our Lady of Lourdes Reg'l Med. Ctr., Inc.*, 21-289 (La.App. 3 Cir. 5/27/21), 321 So.3d 469, 473 (citations omitted), *writs denied*, 21-887, 21-899 (La. 10/12/21), 325 So.3d 1070. A trade practice is "deceptive" under LUTPA if it amounts to fraud, deceit, or misrepresentation. *Dixon v. General Motors Fin. Corp.*, 338 F.Supp.3d 503 (E.D. La. 2018). Hayes' public representations that Sasol's big project would provide work for local companies and that locals would get preferential treatment for the work cannot be characterized as a deceptive trade practice under these accepted definitions.

> The Louisiana Supreme Court in *Quality Environmental Processes, Inc. v. I.P. Petroleum Co.*, 13-1582, 13-1588, 13-1703, p. 2 (La. 5/7/14), 144 So.3d 1011, 1025 (alterations in original), discussed LUTPA as follows:
>
> > In LUTPA, the legislature declared it to be unlawful to engage in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La.Rev.Stat. § 51:1405. Because of the broad sweep of this language, "Louisiana courts determine what is a LUTPA violation on a case-by-case basis." Keith E. Andrews, Comment, *Louisiana Unfair Trade Practices Act: Broad Language and Generous Remedies Supplemented by a Confusing Body of Case Law*, 41 Loy.

---

[3] Except as otherwise provided by Articles 1702(D), 4904(D), and 4921(C), the court may not supply the objection of prescription, which shall be specially pleaded. The nonjoinder of a party, peremption, res judicata, the failure to disclose a cause of action or a right or interest in the plaintiff to institute the suit, or discharge in bankruptcy, may be noticed by either the trial or appellate court on its own motion.

La.Code Civ.P., art. 927(B).

L.Rev. 759, 762 (1996) (hereinafter "Andrews"). This court has consistently held that in establishing a LUTPA claim, a plaintiff must show that "**the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious.**" *Cheramie Services, Inc. v. Shell Deepwater Prod.*, 09-1633, p. 11 (La. 4/23/10), 35 So.3d 1053, 1059. "[*T*]*he range of prohibited practices under LUTPA is extremely narrow,*" *as LUTPA prohibits only fraud, misrepresentation, and similar conduct*, and not mere negligence. *Id.* at 11, 35 So.3d at 1059; Andrews, 41 Loy. L.Rev. at 763. Moreover, conduct that offends established public policy and is unethical is not necessarily a violation under LUTPA. *See, e.g., Cheramie Services*, 09-1633 at 12, 35 So.3d at 1060 (**"[O]nly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA.");** *Vermilion Hosp., Inc. v. Patout*, 05-82, p. 6 (La.App. 3 Cir. 6/8/05), 906 So.2d 688, 693…

GRR also notes the supreme court in *Quality Environmental,* 144 So.3d at 1026, stated LUTPA has a "narrow goal of protecting against egregious actions of fraudulent, deceitful, and unfair business practices to promote and foster healthy and fair business competition."

*GR Restaurants, LLC v. Suzanne Savoy Santillo, LLC*, 18-637, pp. 12-13, (La.App. 3 Cir. 6/12/19), 275 So.3d 50, 60 (emphasis added).

The alleged behavior of Hayes as agent for Sasol does not rise to the level of deceit, fraud, or misrepresentation such as is contemplated under LUTPA. Neither does the alleged failure of Hayes or Sasol to somehow put a stop to the alleged pay-for-play scheme by Canty and Smith while acting as agents of K&S. If such actions by Canty and Smith entitle Plaintiffs to recover damages such potential claims have been preserved by the trial court's actions regarding the Kent defendants which is not at issue here.

*No Cause of Action, Detrimental Reliance*

A peremptory exception of no cause of action presents a question of law, which we review *de novo,* applying the same standard as that applied by the trial court. *Craft v. Allstate Ins. Co.,* 95–160 (La.App. 3 Cir. 8/30/95), 663 So.2d 116, *writ denied,* 95–2403 (La.12/15/95), 664 So.2d 454. The exception tests the legal sufficiency of the petition, and

> is triable on the face of the papers. *City of New Orleans v. Board of Dirs. of La. State Museum,* 98–1170 (La.3/2/99), 739 So.2d 748. No evidence is admissible in support of or in opposition to the exception. *Jones v. Tezeno,* 99–1693 (La.App. 3 Cir. 3/1/00), 758 So.2d 896. To withstand the exception, the petition must set forth the material facts upon which the cause of action is based. *Kahn v. Jones,* 95–259 (La.App. 3 Cir. 11/2/95), 664 So.2d 700. *A petition which simply sets forth factual conclusions without supplying facts to support those conclusions is insufficient. Id.*

*Vermilion Hosp.,* 906 So.2d at 691(emphasis added). *See also*, *Guidry,* 341 So.3d at 796 ("The petition must set forth material facts upon which the cause of action is based. Conclusions of law or fact will not be considered.") (citations omitted).

In their petition, Plaintiffs not only asserted that Hayes' representations to the community on behalf of Sasol formed the basis of their LUTPA claim, but they also asserted those representations form the basis of their detrimental reliance claim. The trial court explained its rationale for granting Sasol's exception of no cause of action on Plaintiffs' detrimental reliance claim. Again, the trial court based its decision on the lack of privity of contract between the Plaintiffs and Sasol. "And many times in Plaintiffs' petition, they talk about the promises made, and promise-based detrimental reliance requires that contract. It's not here in the allegations, sticking just with the pleadings." The trial court's conclusion was correct, but its reasoning was somewhat misguided as we will explain below. Nevertheless, we find Plaintiffs' allegations do not present the basis for a detrimental reliance claim against Sasol, albeit for different reasons than relied upon by the trial court.

Accepting Plaintiffs' allegations which form the basis of their detrimental reliance claims as true, it is apparent on the face of the pleadings that Hayes as representative of Sasol, at best, is alleged to have made gratuitous representations to the community at large, which included Plaintiffs, to the effect that Sasol encouraged local participation in the construction of its facility and that it would have a preference for local vendors for services whenever possible. The jurisprudence of

this State has held it is not reasonable to act upon such vague and generalized gratuitous representations. The Louisiana Civil Code expressly provides that *"Reliance on a gratuitous promise made without required formalities is not reasonable."* La.Civ.Code art. 1967 (emphasis added). In *Dugas v. Guillory*, 97-398 p. 10 (La.App. 3 Cir. 10/7/98), 719 So.2d 719, 724-25, we said "As expressed in La.Civ.Code art.1967, however, a party's reliance on a gratuitous promise made without the required formalities is not reasonable and, thereby, insufficient to sustain a claim of detrimental reliance." And in *LeBlanc v. Thibodeaux*, 18-96, pp. 10-11 (La.App. 3 Cir. 9/26/18), 256 So.3d 1071, 1078 (emphasis added), we explained that,

> [G]ratuitous promises are not enforceable under La.Civ.Code art. 1967 if formalities are required but not observed . . .
>
> Detrimental reliance is generally based upon an oral promise that imposes a burden upon the other party; such a promise is *onerous* because of the burden imposed. *Cenac v. Hart*, 98-1679 (La.App. 3 Cir. 4/7/99), 741 So.2d 690. If the promisee performs the burden at a cost to himself, and the promisor does not keep his part of the bargain, then the oral promise is enforceable, *if it was reasonable for the promisee to rely on the promise in the first place.* With such a promise no writing is required. *Id.* **By contrast, a gratuitous promise is one given freely without imposing a burden**. If this gratuitous promise requires a writing under the law, and no writing is made, the gratuitous promise is not enforceable. *See Id. See Dugas v. Guillory*, 97-398 (La.App. 3 Cir. 10/7/98), 719 So.2d 719, explaining the difference between an enforceable *onerous* promise and an unenforceable *gratuitous* promise. *See also Palermo Land Co., Inc. v. Planning Comm'n of Calcasieu Parish*, 561 So.2d 482 (La.1990) ("Equitable considerations and estoppel cannot be permitted to prevail when in conflict with the positive written law." *Id.* at 488).
>
> As recognized in *John Bailey Contractor, Inc. v. State Through DOTD*, 439 So.2d 1055 (La.1983), a requirement for recovery under the theory of detrimental reliance is that the party seeking recovery *must have had a justifiable reliance in the representation*. In connection with that requirement, La.Civ.Code art. 1967 specifically states that "Reliance on a gratuitous promise made without required formalities is not reasonable."

Thus, to the extent the trial court was referring to Hayes' alleged "promises" as gratuitous promises it was correct in concluding that the lack of a contract with Sasol left Plaintiffs unable to state a cause of action. Not for the mere lack of a contract, as the trial court's language suggests, but because our law has determined that it is not reasonable to rely on a gratuitous promise without a written agreement. Had there been such a contract between Sasol and Plaintiffs, there would be no need to resort to detrimental reliance for recovery because Plaintiffs would then be able to assert a claim for breach of contract. Alas, Plaintiffs' Petition fails to state a cause of action under any theory of recovery.

Plaintiffs' alleged purchases of additional dump trucks relying only upon Hayes' generalized commitments in the public meetings was not reasonable. Prudence would suggest that before incurring such expenses and expanding their abilities to capitalize on the possibilities of new work, Plaintiffs should have secured written contracts with Sasol or at least with Flour or its subcontractor. Indeed, Canty testified at the hearing that if a dump truck owner/company wanted to get hauling work on the Sasol project they were required to sign a contract with K&S and meet certain criteria including proof of worker's compensation insurance, liability insurance, drug and alcohol testing, and OSHA test. After signing a contract with K&S, drivers received a badge which had to be displayed for admission to the project site. He also testified another company, Trico, provided contracts for dump truck hauling of rock materials and it provided authorized access to the site for haulers. According to Canty, the following Plaintiffs did not have a contract with "Kent": Calcasieu Trucking, LLC, Jimmy Comeaux d/b/a Comeaux Dump Truck Service, Charles and Elija Goodwin d/b/a Goodwin Trucking, Clifton Johnson d/b/a Johnson Trucking, and Quality Truck Services, LLC. He testified that without a signed contract with Kent these businesses could not get dump truck work on the site.

According to Canty, Kent was a part of K&S Logistics and because it did not have enough of its own dump trucks to service the volume of work for the project it entered into broker contracts with independent haulers. Plaintiffs could not produce any evidence that they had a contract with Kent, K&S, or Trico to work on the Sasol project. Be that as it may, although this evidence does not form the basis for our finding of no cause of action, it underscores the unreasonableness of Plaintiffs' reliance on gratuitous representations without written contracts. Moreover, this testimony showed that such contracts would not have been with Sasol, making any claim by Plaintiffs against Sasol even more remote and unsupportable.

Additionally, Hayes' alleged representations did not constitute a "promise" which could form the basis of a detrimental reliance claim. When analyzing detrimental reliance claims, Louisiana courts have defined such a "promise" as explained by our sister circuit in *Harris v. Board of Supervisors of Community & Technical Colleges*, 21-844, p. 6 (La.App. 1 Cir. 2/25/22), 340 So.3d 1121, 1126, (emphasis added) (citations omitted),

> A promise is a declaration which binds the person who makes it, either in conscience or law, *to do a specific thing*, which then gives to the other person *a right to expect or claim the performance of that thing*. Another definition of a promise is that it is an offer which is *definite and certain* and which the promisor intends to be binding. A promise *must be clear and unambiguous* in order to be enforceable. *The mere expression of an intention is not a promise.*

We explained in *GR Restaurants,* 275 So.3d at 55–58 (emphasis added),

> Detrimental reliance is codified under La.Civ.Code art. 1967, which states:
>
> Cause is the reason why a party obligates himself.
>
> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. *Reliance on a*

*gratuitous promise made without required formalities is not reasonable.*

The Louisiana Supreme Court in *Luther*, 130 So.3d at 825, explained detrimental reliance as follows:

> The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) *justifiable reliance*; (3) a change in position to one's detriment because of the reliance. *Suire v. Lafayette City-Parish Consolidated Government*, 2004-1459 (La. 4/12/05), 907 So.2d 37, 59. *Estoppels are not favored in our law*; therefore, a party cannot avail himself of that doctrine if he fails to prove all essential elements of the plea. *See Wilkinson v. Wilkinson*, 323 So.2d 120, 126 (La.1975).

Hayes' alleged representations did not constitute "definite and certain" offers to Plaintiffs, were not clear and unambiguous, but instead were mere expressions of an intention to favor local vendors. Moreover, Plaintiffs admit Hayes' representations to the community that the Sasol project would bring a lot of work to the community proved to be true and they admit in their Petition that "all of [their] trucks were placed in the rotation and all worked those trucks every day, when hauling was available, including Saturdays and Sundays, when weather permitted" for an unspecified period of time.

Because we uphold the trial court's granting the exception of no cause of action as to Plaintiffs' detrimental reliance claim, we pretermit any discussion on the trial court's granting the exception of no right of action on this claim. As we noted above, an exception of no right of action presupposes a valid cause of action without which Plaintiffs cannot proceed even if they were members of the class of individuals who could bring such a claim. *See Reese v. State Dep't of Pub. Safety & Corr.*, 03-1615 (La. 2/20/04), 866 So.2d 244.

For the reasons stated, we affirm the trial court's ruling.  All costs of this appeal are assessed against Plaintiffs.

**AFFIRMED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-797

MAYEHAUL TRUCKING, LLC, ET AL

VERSUS

SASOL CHEMICALS, LLC, ET AL

Consolidated With
21-798

SUPERIOR TRUCKING, LLC, ET AL

VERSUS

SASOL CHEMICALS, LLC, ET AL

CONERY, Judge, concurring in the result.

I agree with the lead opinion that an affirmation is warranted in this case, and I concur in the result. However, Plaintiffs appropriately focus on *Cheramie Services, Inc. v. Shell Deepwater Production*, 09-1633 (La. 4/23/10), 35 So.3d 1053 in addressing whether they have stated a right of action under LUTPA, La.R.S. 51:1401, *et seq.* Justice Weimer (now Chief Justice), authoring the lead opinion in *Cheramie Services*, recognized that earlier circuit opinions had determined that LUTPA is limited to business competitors and consumers. While not referenced by the supreme court, the case relied upon by the trial court in this case, *Vermilion Hospital, Inc. v. Patout*, 05-82 (La.App. 3 Cir. 6/08/05), 906 So.2d 688, is one such case. The holding in *Vermilion Hospital* was arguably repudiated in *Cheramie Services*.

Justice Weimer further explained in *Cheramie Services* that:

> Based on the language of the statute, which does not contain a clear, unequivocal and affirmative expression that the private right of action provided in LSA-R.S. 51:1409(A) extends only to business competitors and consumers, LUTPA does not exclude other persons who assert a 'loss of money or … property … as a result of the use or employment of by another person of an unfair or deceptive method, act, or practice.

*Cheramie Services*, 35 So.3d at 1058. Moreover, Justice Weimer stated that "[c]ontrary holdings are hereby repudiated, because limitation must be contained in the language of the statute." *Id.*

As emphasized by the Sasol defendants, Justice Weimer was writing for a plurality in *Cheramie Services*, not the majority. Regardless, the guidance offered therein cannot be overlooked in evaluating the continued persuasiveness of this circuit's earlier jurisprudence indicating that a plaintiff could only maintain a LUTPA claim if the plaintiff was either a consumer of the defendant's product or a direct competitor. *See, e.g., Vermilion Hosp.*, 906 So.2d 688.

Plaintiffs suggest that *Cheramie Services*'s more expansive view of the right of action provided by LUTPA indicates that they have "standing" to bring the suit against the Sasol defendants. But Justice Weimer further stated in *Cheramie Services*, 35 So.3d at 1058 that "[a]lthough LUTPA is available to plaintiffs other than business competitors and consumers, a plaintiff's burden of proving an unfair or deceptive method, act, or practice on the part of a defendant is not lessened by th[at] opinion." On this point, while La.R.S. 51:1405(A) prohibits any "unfair or deceptive acts or practices in the conduct of any trade or commerce," "it has been left to the courts to decide on a case-by-case basis, what conduct falls within the statute's prohibition." *Id.* at 1059. Moreover, "'[t]he courts have repeatedly held that, under this statute, the plaintiff must show that the alleged conduct 'offends

established public policy and … is immoral, unethical, oppressive, unscrupulous, or substantially injurious.'" *Id.* at 1059 (quoting *Moore v. Goodyear Tire & Rubber Co.*, 364 So.2d 630, 633 (La.App. 2 Cir. 1978)). "[O]nly egregious actions involving elements of fraud, misrepresentations, deception, or other unethical conduct will be sanctioned based on LUTPA." *Id.* at 1060. *See also Caldwell Wholesale Co., L.L.C. v. R.J. Reynolds Tobacco Co.*, No. 17-0200 , 2018 WL 2209165 (W.D. La. May 11, 2018), *aff'd*, 781 Fed.Appx. 289 (5th Cir. 2019). That range of prohibited practices is "extremely narrow[.]" *Cheramie*, 35 So.3d at 1060. *See also J.A. Davis Props., LLC v. Martin Operating P'ship, LP*, 17-449 (La.App. 3 Cir. 6/21/17), 224 So.3d 39.

Regardless of the right of action identified in *Cheramie Services*, it is on this latter basis that I believe that the lead opinion correctly identifies that Plaintiffs fail to state a *cause* of action under LUTPA against the Sasol defendants. Justice Weimer explained in *Cheramie Services* that LUTPA requires "egregious" actions. While Plaintiffs' petition sets forth facts alleging a "kickback scheme" in an attempt to recover under LUTPA, Plaintiffs do not allege specific facts indicating that the Sasol defendants, themselves, perpetrated that scheme. Outside of merely conclusory allegations of Sasol having carried out a systematic plan of kickbacks, Plaintiffs only more particularly allege that the Sasol defendants learned of the scheme, and, in turn, Sasol failed to remedy the scheme and failed to honor alleged general representations to the community at large of favoring local companies for work on the construction project.

As recognized by both the trial court and the lead opinion, however, Sasol had no privity of contract with Plaintiffs, an element that distinguishes this matter, at least in some part, from *Cheramie Services*, a case in which the plaintiff and

defendant shared a contractual relationship. In this case, Sasol had a "turnkey contract" for construction of the plant with Fluor Technip Integrated and had no contractual relationship with Plaintiffs. Under these facts, and given the attenuated nature of the Plaintiffs' relationship with the Sasol defendants, I find that Plaintiffs have failed to state a cause of action against the Sasol defendants under LUTPA. Rather, the factual allegations as to the Sasol defendants' conduct is not of such a fraudulent or deceptive nature that a LUTPA claim can be maintained against them. It is also noted that this case has been pending since June 2016. There has been more than enough time for discovery, and Plaintiffs have failed to file supplemental and/or amending petitions to allege any specific facts to state a lawful cause of action as to Sasol. I therefore join in the affirmation of the dismissal of the LUTPA claim against the Sasol defendants under the specific facts of this case.

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

21-797


MAYEHAUL TRUCKING, LLC, ET AL.

VERSUS

SASOL CHEMICALS, LLC, ET AL.

Consolidated With

21-798

SUPERIOR TRUCKING, LLC, ET AL.

VERSUS

SASOL CHEMICALS, LLC, ET AL


FITZGERALD, Judge, dissenting with reasons.

I respectfully disagree that an affirmation is warranted in this case.

First, I believe that Plaintiffs have standing to assert a claim under the LUTPA. *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10), 35 So.3d 1053. All five of Louisiana's intermediate courts of appeal have followed the plurality opinion in *Cheramie* and found that private parties have a right of action under the LUTPA. *See Jones v. Americas Ins. Co.*, 16-904 (La.App. 1 Cir. 8/16/17), 226 So.3d 537; *Bogues v. Louisiana Energy Consultants, Inc.*, 46,434 (La.App. 2 Cir. 8/10/11), 71 So.3d 1128; *J.A. Davis Properties, LLC v. Martin Operating Partnership, LP*, 17-449 (La.App. 3 Cir. 6/21/17), 224 So.3d 39; *Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co.*, 14-323 (La.App. 4 Cir. 10/1/14), 151 So.3d 670; and *Hurricane Fence Co., Inc. v. Jensen Metal Products, Inc.*, 12-956 (La.App. 5 Cir. 5/23/13), 119 So.3d 683.

Second, a cause of action under the LUTPA does not require a valid, enforceable contract. Nor does a cause of action for detrimental reliance require a

valid, enforceable contract. *Morris v. People's Bank & Trust Co. of Natchitoches*, 580 So.2d 1029 (La.App. 3 Cir.), *writ denied*, 588 So.2d 101 (La.1991).

Third and finally, Plaintiffs' petition nevertheless fails to sufficiently state a cause of action under the LUTPA. The petition also fails to state a cause of action for detrimental reliance. Thus, the issue is whether "the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition[.]" La.Code Civ.P. art. 934. In my view, Plaintiffs must be afforded the opportunity to amend.

In sum, I dissent from the result reached by my esteemed panelists. The case should be remanded not dismissed.